935 So.2d 1272 (2006)
CARIB-USA SHIP LINES BAHAMAS LIMITED, Appellant,
v.
Carmen DORSETT, Appellee.
No. 4D05-2290.
District Court of Appeal of Florida, Fourth District.
August 23, 2006.
*1273 Roberta G. Mandel, Andrew W. Anderson and Matthew J. Valcourt of Houck Anderson P.A., Miami, for appellant.
Rebecca B. Watford of The Watford Law Firm, and Charles R. Lipcon of Lipcon, Margulies and Alsina, P.A., Miami, for appellee.
WARNER, J.
Carib-USA Ship Lines Bahamas, Ltd., appeals the trial court's denial of its motion to dismiss plaintiff's complaint for lack of personal jurisdiction. Because Carib-USA did not have sufficient minimum contacts with the state to support jurisdiction at the time of the filing of the suit, we reverse.
On August 2, 2003, the plaintiff, Carmen Dorsett, was a passenger aboard the M/V Sea Hauler when the Sea Hauler collided with the United Star, owned by Carib-USA, in Bahamian waters. Dorsett was injured in the collision, and several other passengers were killed. The Sea Hauler was a ferry line between Bahamian Islands, *1274 and the United Star made charter cargo runs between Bahamian Islands. The United Star did not make port in the United States.
Dorsett filed suit against Carib-USA in Palm Beach County alleging that it operated a business venture in Palm Beach and was engaged in substantial business activity in the state. Carib-USA filed a motion to dismiss for lack of personal jurisdiction and improper service of process.[1] It maintained that it was not engaged in significant business activities in Palm Beach County nor did it maintain minimum contacts with Florida to support jurisdiction. Attached to the motion was an affidavit of Thomas Hanna, president of Carib-USA, who stated that the company was a Bahamian registered company which owned and operated the United Star in Bahamian waters. United Star did not make any calls in the United States. Carib-USA held no bank accounts in Palm Beach County, nor did it have any offices to conduct business there.
Hanna further stated that Carib-USA owns one other vessel, United Spirit. That vessel was chartered to another company. Based upon the charter terms, Carib-USA does not determine ports of entry for this vessel or its cargo. This vessel does make ports of call in the United States.
Carib-USA was required to appoint a limited statutory agent to receive notices pursuant to United States pollution laws in case one of its vessels does make a call in a United States port. Glen Dias, of Palm Beach County, was appointed by Carib-USA to receive such notices.
In his deposition, Hanna elaborated further on the activities of the United Spirit, the vessel which actually did make ports of call in Palm Beach. The United Spirit is also a Bahamian registered vessel which is on a written time charter to a Bermudian Company, Tropical Shipping and Construction Company, Ltd. This time charter was entered into on October 11, 2003, which was after the accident in this case. Prior to that time, the United Spirit was on a sport charter. Hanna signed the charter in Riviera Beach, Florida at the offices of Tropical Shipping. However, the record is not clear as to whether this entity is a Florida affiliate of the Bermudian Charterer or is simply the United States corporate offices of the Bermudian company.
Under the charter to the Bermudian corporation, the charterers hired the vessel for a period of one year with an option to renew for up to two additional periods of six months. The charter permits the vessel to be employed in trade between ports in the Caribbean, including the United States, "as the Charterers shall direct." Carib-USA provides the crew for the vessel, but the charterer can request changes upon complaint by the owner. Carib-USA receives $60,000 per month in Bahamian currency from the charterer for the lease of the vessel, which is wired from Tropical Shipping's Bahamian bank and deposited in Carib-USA's Bahamian accounts. There is no forum selection clause in the contract, but disputes are to be arbitrated in New York.
Tropical Shipping has offices at the Port of Palm Beach, and provides fuel for the United Spirit. Thus, at the time of Hanna's deposition, he testified that the United Spirit was refueling in Palm Beach County roughly every six to eight weeks.
The United Star, the vessel involved in the collision, is operated directly by Carib-USA *1275 but has not made a visit to the United States since 2000.
At the hearing on the motion to dismiss, the parties relied on the affidavit and deposition of Thomas Hanna, as well as other documents regarding the charter of the United Spirit. At the conclusion of the hearing, the court denied the motion to dismiss, prompting this appeal.
Generally, a trial court's ruling on a motion to dismiss for lack of personal jurisdiction is reviewed de novo. Wendt v. Horowitz, 822 So.2d 1252, 1256-57 (Fla. 2002). Section 48.193, Florida Statutes, is the long-arm statute of this state and provides, in relevant part:
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
. . . .
(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.
In Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla.1989), our supreme court set forth a two-step inquiry for determining whether a Florida court has personal jurisdiction over a nonresident. First, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of Florida's long-arm statute, section 48.193, Florida Statutes. Id. If so, the next inquiry is whether sufficient "minimum contacts" are demonstrated to satisfy due process requirements. Id. "Both parts must be satisfied for a court to exercise personal jurisdiction over a non-resident defendant." Am. Fin. Trading Corp. v. Bauer, 828 So.2d 1071, 1074 (Fla. 4th DCA 2002).
Due process requires that a nonresident has sufficient minimum contacts with the forum state such that the maintenance of a suit does not offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In analyzing whether a nonresident has the requisite minimum contacts with a forum state to justify personal jurisdiction, courts should determine whether the nonresident's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In order for a nonresident defendant to anticipate being haled into a Florida court, it is essential that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within Florida, thus invoking the benefits and protections of its laws. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).
An assertion of general jurisdiction requires a showing of "continuous and systematic general business contacts" with the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). If the burden is met under Florida's general jurisdiction statute, the constitutional *1276 due process burden is necessarily also met. Woods v. Nova Companies Belize Ltd., 739 So.2d 617, 620 (Fla. 4th DCA 1999).
Contacts are generally assessed over a period of years prior to the filing of the complaint. Id. at 621; see also Helicopteros, 466 U.S. at 409-11, 104 S.Ct. 1868 (examining contacts over a seven year period, up to the time the lawsuit was filed). Thus, contacts established after the time of the service of the complaint generally should not be used to establish minimum contacts at the time the defendant is "haled into court" for the activity giving rise to the cause of action.
Given these legal precepts, we conclude that Dorsett has failed to show that Carib-USA has either engaged in "substantial and not isolated activity within this state" or has minimum contacts with this state sufficient to support the assertion of personal jurisdiction over Carib-USA by our courts.
Dorsett's complaint alleged that jurisdiction existed under section 48.193 because Carib-USA was engaged in substantial activity within this state, operated vessels in the waters of this state, and was engaged in the business of carrying cargo to and from Florida on the vessel, United Star. However, Hanna's affidavit, as well as his deposition, which are uncontradicted and were relied upon by all sides at the hearing, show that United Star has not called on ports in the United States at all since 2000.
The only connection of Carib-USA with the United States, or Florida, is through the United Spirit, a vessel owned by Carib-USA but chartered to a Bermudian Company, which had control of its routing and ports of call. That vessel was chartered after the accident in this case, and began making regular calls for fuel at the Port of Palm Beach. From the time that the charter was made until the time the complaint in this case was filed, it would appear that the vessel may have stopped at the Port of Palm Beach two or three times. All of these port calls would have been at the direction of Tropical Shipping.
The control of the ports of call is the key factor in this case. This point is made clear by Am. Overseas Marine Corp. v. Patterson, 632 So.2d 1124 (Fla. 1st DCA 1994). There, the First District dealt with a similar case involving personal jurisdiction over the owner, operator, and charterer of a vessel upon which the plaintiff was injured while in Saipan in the Pacific Ocean.
The vessel on which the plaintiff's injury occurred in American Overseas was owned by Wilmington Trust Company, chartered to Braintree Marine Corporation, and operated by American Overseas. American operated several vessels chartered by Braintree, which had contracted with the United States Government to pre-position vessels around the world loaded with equipment for rapid deployment of an amphibious brigade of military forces.
All of the vessels chartered by Braintree and operated by American came to port on occasion in different parts of Florida. Some activity in the Florida port was part of military exercises of loading and unloading equipment, and some constituted repair and maintenance work. The only "agent" American and Braintree had in Florida was the vessels' "husbanding agent." The activities of the vessel in Florida were all at the direction of the United States Military pursuant to the charter with Braintree.
Although the charter in American Overseas between the vessel owner and Braintree was a "bareboat charter," one conferring all possession and control to the charterer, the First District looked to Nicolaisen v. Toei Shipping Co., Ltd., 722 F.Supp. 1162 (D.N.J.1989), a case involving a vessel on time charter, to conclude that minimum contacts had not been established *1277 in Florida, even though all of the vessels chartered by Braintree and operated by American had docked at Florida ports. In Nicolaisen, the plaintiff had sought to establish jurisdiction over the owner of the vessel, because the charterer of the vessel had called on New Jersey ports seventeen times over the four years immediately preceding the lawsuit. Those contacts were held to be "haphazard and fortuitous," not continuous and systematic.
Explaining the Nicolaisen case further, the First District stated:
The court also noted that the vessel's charterer, not the defendant-owner, controlled the vessel's itinerary and determined at what ports she would call, and that this provided a second, independent basis for granting the motion to dismiss. Id. In this connection, the court stated as follows:
Toei's lack of control over where the Tama Rex would make port militates against finding that Toei was reasonably put on notice that it might be called upon to defend actions in New Jersey, especially actions that did not arise in the state. As the Supreme Court stated in the seminal case of Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state."
Am. Overseas Marine Corp., 632 So.2d at 1129. The First District also cited to Asarco, Inc. v. Glenara, Ltd., 912 F.2d 784 (5th Cir.1990), Conner v. Bouchard Transp. Co., Inc., 1993 WL 388274 (E.D.Pa. September 30, 1993), and Uni-Petrol Gesellschaft Fur Mineraloel Produkte, M.B.H. v. MT Lotus Maru, 607 F.Supp. 108 (S.D.N.Y.1985), for the proposition that jurisdiction over a vessel's owner (or operator) cannot be established simply by its making calls to ports where control of the ports of call rests with the charterer of the vessel. The First District concluded:
Under the reasoning in Nicolaisen and Asarco, and the other above-cited authorities, appellants' contacts with Florida cannot permissibly be considered, consistent with the constitutional requirements of due process, since the MPS vessels have called at Florida ports only at the direction of the United States military, not by the choice of any of these defendants.
Am. Overseas Marine Corp., 632 So.2d at 1130. The court thus reversed the denial of the motion to dismiss for lack of jurisdiction as to all the defendants.
Similarly, in this case the United Spirit was chartered to Tropical Shipping which controlled the ports of call for the vessel and directed its movement. That the United Spirit called on the Port of Palm Beach at the direction of Tropical Shipping does not afford minimum contacts which subject Carib-USA, the vessel's owner, to jurisdiction in Florida. Carib-USA could not be said to be reasonably expected to be "haled into court" in Florida, where the vessel on which the injury occurred had no contact with Florida and the only other vessel owned by Carib-USA stopped in ports of Florida at the direction of the charterer, not Carib-USA.
Because Carib-USA was not subject to jurisdiction in Florida, we reverse the trial court's order with directions to enter an order granting Carib-USA's motion to dismiss for lack of jurisdiction.
Reversed with directions.
HAZOURI and GROSS, JJ., concur.
NOTES
[1] It also filed a motion to dismiss for forum non conveniens which we do not address because of our disposition on jurisdictional grounds.