# Third District Court of Appeal

## State of Florida

Opinion filed January 24, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-730
Lower Tribunal No. 15-27321
_____

## Banco de los Trabajadores,
Appellant,

vs.

## Ricardo Rene Cortez Moreno,
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, William Thomas, Judge.

Dorta & Ortega, P.A., and Omar Ortega, Rey Dorta and Rosdaisy Rodriguez; Williams & Connolly LLP, and Peter J. Kahn, Jonathan M. Landy and Matthew H. Jasilli (Washington, D.C.), for appellant.

Brill & Rinaldi, The Law Firm, and David W. Brill, Joseph J. Rinaldi and Michelle Y. Medina-Fonseca (Weston); The McKee Law Group, LLC, and Robert J. McKee (Davie); Joel S. Perwin, P.A., and Joel S. Perwin, for appellee.

Before EMAS, LOGUE and SCALES, JJ.

PER CURIAM.

**I. Introduction**

Appellant Banco de los Trabajadores ("Bantrab"), the defendant below, was sued by Appellee Ricardo Rene Cortez Moreno ("Cortez"). In this non-final appeal, Bantrab seeks review of the trial court's order denying its motion to dismiss two counts of Cortez's complaint for lack of personal jurisdiction. For the reasons that follow, we reverse the trial court's order denying Bantrab's motion to dismiss.

In November of 2015, Cortez filed a complaint against Bantrab, a Guatemalan bank, and against seven individual directors of Bantrab (the "Directors"). Cortez later filed an amended (and second amended) complaint that alleged the following twenty claims:

| | |
|---|---|
| Counts I-VII: | Assault and Battery (against the Directors); |
| **Count VIII:** | **Assault and Battery (against Bantrab);** |
| Counts IX-XV: | Florida RICO (against the Directors); |
| **Count XVI:** | **Florida RICO (against Bantrab);** |
| Count XVII: | Breach of Contract (against Bantrab); |
| Counts XVIII-XX: | Tortious Interference with Contract (against three of the Directors) |

(The counts relevant to this appeal are in **bold**.)

This appeal addresses only the portion of the trial court's March 14, 2017 order that found personal jurisdiction as to Bantrab,[1] and only as to Counts VIII (assault and battery) and XVI (Florida RICO violations).[2]

## II. Background Facts

The second amended complaint contains the following allegations:

Bantrab is a Guatemalan corporation, with its principal place of business in Guatemala. Cortez was a citizen of Guatemala but has been a resident of Miami-Dade County since 2008, and is now a United States citizen.

In 2008, Bantrab entered into a written professional services agreement with Cortez, under which Cortez would assist in promoting and increasing Bantrab's business and business presence in Florida and the United States. Both parties further agreed to submit any type of dispute relating to the contract to the jurisdiction of the courts of Miami-Dade County.

The complaint alleges that Bantrab launched a "Bancarization project" that sought the business of Guatemalan residents who worked and lived in Florida and who sent money to their families in Guatemala. To help create and operate this business, Bantrab entered into a contract with Cortez's company, Union Expresso.

---

[1] The Directors were later dismissed on the basis of improper service, and therefore, only Bantrab has appealed the trial court's order.

[2] Bantrab did not appeal that portion of the trial court's order finding that Florida's long-arm statute conferred specific jurisdiction over Bantrab to adjudicate Cortez's claim for breach of contract (Count XVII).

To promote the Bancarization project, Bantrab sent officers and staff to Florida, set up small banking facilities ("mini-consulates") in Florida, advertised in Florida, contracted with money transfer companies based in Florida, and worked with several associate banks in Florida. Cortez acknowledged in his complaint that Bantrab's formal banking activities take place in Guatemala.

At some point, the President of the Republic of Guatemala became aware that Bantrab was allegedly involved in money laundering. He contacted Cortez and asked Cortez to investigate Bantrab's suspected money-laundering activities in Florida and elsewhere in the United States. From this point onward, as he acted upon the President's request, Cortez allegedly became a target of Bantrab and the Directors. Cortez alleges he discovered evidence that Bantrab and the Directors were participating in a large-scale conspiracy. Relevant to the jurisdictional issue presented, Cortez alleges he discovered that Bantrab and the Directors were aiding and abetting drug traffickers by laundering the proceeds of narcotics trafficking and transferring these proceeds to Florida through Bantrab. Further, Cortez alleges that the Directors were traveling to Florida to meet with members and representatives of drug cartels in furtherance of this unlawful activity.

When the Directors learned of Cortez's investigation, the Directors threatened Cortez that if he did not stop his investigation, leave Florida and come to Guatemala, they would ruin his substantial business in Guatemala. The

4

Directors went to Florida to meet with Cortez in a further attempt to convince Cortez to halt his investigation and to bury his findings. When Cortez refused, Bantrab canceled its contract with Cortez's company, Union Expresso.

At that point, Cortez decided to travel to Guatemala in an attempt to reach some acceptable resolution with Bantrab. On August 20, 2009, Cortez met with the Directors but no real progress was made at that meeting. Two days later, while still in Guatemala and on his way to the airport to return to Florida, the vehicle Cortez was riding in was fired upon forty-two times, and Cortez was struck by two of the bullets. One bullet traveled through Cortez's right arm and into his chest and torso. The second bullet entered his lower back. Cortez alleges that the Directors, as agents or employees of Bantrab, hired a hitman to carry out this attack on Cortez because of Cortez's investigation into Bantrab's (and the Directors') conspiracy and money-laundering activities allegedly occurring in Florida. This attempted murder formed the basis for Cortez's assault and battery claims.

### III. Procedural Background

In addition to pleading these case-specific facts, Cortez's second amended complaint also tracked the statutory language of the relevant portions of Florida's long-arm jurisdiction statute (section 48.193 of the Florida Statutes (2015)). Cortez alleged that Bantrab was subject to the jurisdiction of the courts of Florida for

causes of action arising from Bantrab's alleged: (i) operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; (ii) committing a tortious act within this state; or (iii) engaging in substantial and not isolated activity within this state.

After the second amended complaint was filed, Bantrab filed a motion to dismiss, contending that, even accepting all of the complaint's allegations as true, those allegations, as a matter of law, fail to establish personal jurisdiction over Bantrab for the assault and battery claim and the Florida RICO claim. Bantrab opposed all jurisdictional discovery and the trial court permitted no discovery on this issue. The trial court held a non-evidentiary hearing[3] on Bantrab's motion and, on March 14, 2017, entered the order on appeal that denied Bantrab's motion to dismiss, concluding that the allegations of Cortez's second amended complaint established both general and specific personal jurisdiction over Bantrab. The trial court's order, though, did dismiss, without prejudice, Cortez's Florida RICO claim against Bantrab (Count XVI), requiring Cortez to file a more definite statement.

---

[3] Although Bantrab filed an affidavit of Alba Virginia Marisol Garcia Escobar, the legal corporate manager and secretary of the board of directors of Bantrab, the trial court found that the averments of that affidavit failed to refute the specific jurisdictional allegations in the second amended complaint. On appeal, Bantrab does not contest this finding, but argues that even if the allegations of the second amended complaint are accepted as true, Cortez failed to establish either specific or general jurisdiction over Bantrab for the assault and battery and Florida RICO claims.

6

Bantrab timely appealed the jurisdictional determinations in the trial court's March 14, 2017 non-final order. We have jurisdiction. <u>See</u> rule 9.130(a)(3)(C)(i).[4]

## IV. Analysis[5]

---

[4] During the pendency of an appeal of a non-final order, absent a stay, the trial court continues to exercise jurisdiction over a case except that a trial court may not render a final order disposing of the case while appellate review is pending. Rule 9.130(f). The docket in this case reflects that, on April 12, 2017, Cortez filed a third amended complaint, again alleging against Bantrab an assault and battery claim (in Count VII), a Florida RICO claim (in Count XIV), and a breach of contract claim (in Count XV). On June 20, 2017, the trial court granted, with prejudice, Bantrab's motion to dismiss all of Cortez's claims against Bantrab contained in Cortez's third amended complaint. The trial court determined that Cortez's claims are time-barred and, in the case of the Florida RICO claim, that Cortez failed to state a legally viable cause of action. Because rule 9.130(f) precluded the trial court from entering a final dismissal order consistent with its June 20 order granting Bantrab's motion to dismiss, Bantrab asked this Court to hold this appeal in abeyance, and allow the trial court to enter a final, appealable dismissal order. Cortez opposed Bantrab's relinquishment motion, and this Court denied Bantrab's motion. Generally, a determination that a plaintiff cannot state a cause of action against a defendant will render moot a personal jurisdictional determination. <u>See</u> <u>Wendt v. Horowitz</u>, 822 So. 2d 1252, 1260 (Fla. 2002). We decline, however, to dismiss this appeal on mootness grounds. Any mootness of the jurisdictional determination might be only temporary. For example, the trial court might decide, for whatever reason, not to enter a final judgment for Bantrab; or, if the trial court does enter such a judgment for Bantrab, that judgment could be subject to rehearing or reversal on appeal. Importantly, we express no opinion on the viability of Cortez's claims Bantrab; but, because there remains the possibility that Cortez's claims against Bantrab may be reinstated, our review of the jurisdictional determinations in the trial court's March 14, 2017 order is not rendered moot.

[5] We review de novo the trial court's decision on a motion to dismiss for lack of personal jurisdiction of a defendant. <u>Wendt v. Horowitz</u>, 822 So. 2d at 1256; <u>Castillo v. Concepto Uno of Miami, Inc.</u>, 193 So. 3d 57, 59 (Fla. 3d DCA 2016).

On appeal, Bantrab contends that Cortez failed to allege sufficient jurisdictional facts to establish either general or specific jurisdiction over Bantrab, a non-resident defendant, as to the assault and battery and Florida RICO counts. Bantrab also contends that the trial court applied the incorrect standard in making its determination as to general jurisdiction.

In Florida, the appropriateness of exercising personal jurisdiction over a nonresident defendant involves a two-part inquiry. The court must:

> first determine whether sufficient jurisdictional facts exist to bring the action within the ambit of Florida's long-arm statute (section 48.193), and then [it must] determine whether the foreign corporation possesses sufficient "minimum contacts" with Florida to satisfy federal constitutional due process requirements.

Reynolds Am., Inc. v. Gero, 56 So. 3d 117, 119 (Fla. 3d DCA 2011) (citing Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989)). Florida courts undertake the Venetian Salami inquiry by first determining whether the complaint's allegations are sufficient to bring the action within the ambit of Florida's long-arm statute. If the allegations are sufficient, the burden then shifts to the defendant to contest, via affidavit or other sworn proof, the jurisdictional allegations or whether sufficient minimum contacts exist; if properly contested, the burden then returns to the plaintiff to refute the defendant's evidence with similar sworn proof. Belz Investco Ltd. P'ship v. Groupo Immobiliano Cababie, S.A., 721 So. 2d 787, 789 (Fla. 3d DCA 1998) (citations omitted).

First, we provide an overview of "general" and "specific" jurisdiction provided for in Florida's long-arm statute; then, we discuss whether Cortez's general jurisdictional allegations are sufficient under the statute as informed by recent United States Supreme Court precedent; and finally, we evaluate whether Cortez's specific jurisdictional allegations are sufficient under the statute.

*A. "General" and "Specific" Jurisdiction under Florida's Long-Arm Statute*

Cortez bears the initial burden of alleging sufficient allegations to bring the action within the ambit of Florida's long-arm statute, section 48.193 of the Florida Statutes. Id. at 789; see also Casita, L.P. v. Maplewood Equity Partners L.P., 960 So. 2d 854, 856 (Fla. 3d DCA 2007). Long-arm jurisdiction under section 48.193 may be established in one of two ways: "general" jurisdiction or "specific" jurisdiction. Rautenberg v. Falz, 193 So. 3d 924, 928 (Fla. 2d DCA 2016). A Florida court has "general" jurisdiction over a nonresident defendant when the defendant has "engaged in substantial and not isolated activity within this state." See § 48.193(2), Fla. Stat. (2015).[6] If a defendant is subject to the court's "general" jurisdiction, it is unnecessary to establish "whether or not the claim arises from that

_____

[6] Section 48.193(2) (general jurisdiction) provides in full:

> A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

9

activity." Id. Conversely, "specific" jurisdiction is claim-specific. A Florida court may exercise "specific" jurisdiction over a nonresident defendant in those cases in which it is alleged that the nonresident defendant commits any of the specific acts enumerated in the statute in Florida, so long as the cause of action arises from that enumerated act committed in Florida. See § 48.193(1)(a)1.-9. (Fla. Stat. (2015).[7]

[7] Section 48.193(1)(a) (specific jurisdiction) provides in full:

A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:

1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
2. Committing a tortious act within this state.
3. Owning, using, possessing, or holding a mortgage or other lien on any real property within this state.
4. Contracting to insure a person, property, or risk located within this state at the time of contracting.
5. With respect to a proceeding for alimony, child support, or division of property in connection with an action to dissolve a marriage or with respect to an independent action for support of dependents, maintaining a matrimonial domicile in this state at the time of the commencement of this action or, if the defendant resided in this state preceding the commencement of the action, whether cohabiting during that time or not. This paragraph does not change the residency requirement for filing an action for dissolution of marriage.
6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
a. The defendant was engaged in solicitation or service activities within this state; or

10

*B. General Jurisdiction*

In the instant case, not only did Cortez's second amended complaint track the statutory language of the general jurisdiction provisions of Florida's long-arm statute – alleging that Bantrab "engaged in substantial and not isolated activity within this state" § 48.193(2), Fla. Stat. (2015) – Cortez also included detailed allegations that Bantrab engaged in substantial and not isolated activity within this state, including the allegations that Bantrab:

- Launched a "Bancarization project" that sought the business of Guatemalan residents who worked and lived in Florida and who sent money to their families in Guatemala.

- Sent officers and staff to Florida, set up small banking facilities ("mini-consulates") in Florida;

- Advertised in Florida, contracted with money transfer companies based in Florida, and worked with several associate banks in Florida; and

- Participated in a large-scale conspiracy to aid and abet drug traffickers by laundering the proceeds of this narcotics trafficking through Bantrab and through Florida financial institutions and by

---

b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.
7. Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.
8. With respect to a proceeding for paternity, engaging in the act of sexual intercourse within this state with respect to which a child may have been conceived.
9. Entering into a contract that complies with s. 685.102.

11

traveling to Florida to meet with members and representatives of drug cartels.

The trial court concluded that the allegations of the second amended complaint, which Bantrab's affidavit failed to refute specifically,[8] were sufficient to establish general jurisdiction over Bantrab. The trial court found that Cortez sufficiently alleged that Bantrab engaged in "substantial and not isolated activity within this state," see section 48.193(2), which has been construed to mean a showing of "continuous and systematic general business contact" with the state. Vos, B.V. v. Payen, 15 So. 3d 734, 736 (Fla. 3d DCA 2009); Gadea v. Star Cruises, Ltd., 949 So. 2d 1143, 1145 (Fla. 3d DCA 2007) (quoting Carib-USA Ship Lines Bahamas, Ltd. v. Dorsett, 935 So. 2d 1272, 1275 (Fla. 4th DCA 2006) and Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984)); Bafitis v. Ara, 815 So. 2d 702, 703 (Fla. 3d DCA 2002). We have held that the requirement of continuous and systematic general business contacts "must be 'extensive and pervasive, in that a significant portion of the defendant's

_____

[8] As this court observed in Tobacco Merchs. Ass'n of U.S. v. Broin, 657 So. 2d 939, 941 n.4 (Fla. 3d DCA 1995):

> The court in Venetian Salami did not create a default procedure whereby the mere filing of any affidavit by a defendant requires that a trial court rule in his favor. The defendant's affidavit must meet all requirements for legal sufficiency and must also refute all jurisdictional allegations in the plaintiff's complaint. But once this has been done, the burden shifts to the plaintiff to refute the legally sufficient affidavit.

12

business operations or revenue [are] derived from established commercial relationships in the state.'" Taylor v. Gutierrez, 129 So. 3d 415, 419 (Fla. 3d DCA 2013) (quoting Caiazzo v. Am. Royal Arts Corp., 73 So. 3d 245, 259 (Fla. 4th DCA 2011)) (additional citations omitted).

The constitutional due process standard, however, for determining general jurisdiction changed significantly with the United States Supreme Court's decisions in Daimler AG v. Bauman, 134 S. Ct. 746 (2014), and Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915 (2011).

In Daimler, the Court held that "approv[ing] the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business' . . . [represents a] formulation [that is] unacceptably grasping." 134 S. Ct. at 760-61. Instead, Daimler reaffirmed the principle announced earlier in Goodyear:

> [T]he inquiry under Goodyear is not whether a foreign corporation's in-forum contacts can be said to be in some sense "continuous and systematic," it is whether that corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."

Id. at 761 (quoting Goodyear, 564 U.S. at 919).

We conclude that the trial court applied the incorrect constitutional due process standard in determining whether it could exercise general jurisdiction over Bantrab on the counts for assault and battery and Florida RICO. Although our

standard of review is de novo, and while we might have the discretion to make such a determination in the first instance, we conclude it is more appropriate, on this record and under these circumstances, for the trial court to make this determination in the first instance. We therefore reverse that portion of the trial court's March 14, 2017 order and, to the extent it may be necessary, remand so the trial court can apply Daimler and Goodyear in its determination of whether Cortez's operative complaint sufficiently alleges the court's general jurisdiction over Bantrab to adjudicate Cortez's assault and battery and Florida RICO claims.

## C. Specific Jurisdiction

In addition to finding Cortez had adequately alleged a basis for the trial court to assert general jurisdiction over Cortez's claims under section 48.193(2), in its March 14, 2017 order, the trial court also determined that Cortez's second amended complaint provided a sufficient basis for the trial court to assert specific jurisdiction under section 48.193(1)(a) of Florida's long arm statute.

Cortez asserts that the court may exercise specific jurisdiction over Bantrab because his complaint tracks the language of sections 48.193(1)(a)(1) and (2), i.e., those provisions of Florida's long-arm statute authorizing the court to exercise specific jurisdiction over a nonresident defendant that operates a business venture in this state or commits a tort in this state. In relevant part this statute provides: "A person . . . who . . . *does* any of the acts enumerated in this subsection thereby

14

submits himself . . . to the jurisdiction of the courts of this state for any *cause of action arising from* . . . 1. Operating, conducting, engaging in, or carrying on a business or business venture *in this state* . . . . 2. Committing a tortious act *within this state* . . . ." § 48.193(1)(a)1.-2., Fla. Stat. (2015) (emphasis added).

Specifically, Cortez alleges that Bantrab committed a tort in Florida (the conspiracy to murder Cortez to prevent him from continuing his investigation into Bantrab's illegal activities in Florida) and that Bantrab was operating a "business" or "business venture" in Florida (the illegal money-laundering operation). Cortez contends that the assault and battery (the attempted murder in Guatemala) and the Florida RICO claims arose from tortious acts committed in Florida and from Bantrab's allegedly illegal business operations in Florida.

While sufficient allegations of general jurisdiction do not require any showing that the cause of action arises from the defendant's activity in the state (see section 48.193(2)), those provisions of Florida's long-arm statute governing specific jurisdiction expressly require allegations *both*: (i) that the defendant does one of the enumerated acts within Florida, *and* (ii) that the plaintiff's cause of action "arise from" one of the enumerated acts occurring in Florida. See § 48.193(1)(a), Fla. Stat. (2015). These dual requirements – that the defendant's conduct occur in Florida and that the plaintiff's cause of action arises from such Florida activity – are known as the statute's connexity requirement. See, e.g.,

Wendt, 822 So. 2d at 1260; see generally White v. Pepsico, Inc., 568 So. 2d 886 (Fla. 1990); Wiggins v. Tigrent, 147 So. 3d 76, 87 (Fla. 2d DCA 2014); Am. Overseas Marine Corp. v. Patterson, 632 So. 2d 1124, 1127 (Fla. 1st DCA 1994).

1.  Assault and Battery (Count VIII)

a. Committing a tortious act within Florida – section 48.193(1)(a)(3)

Bantrab contends that, because the assault and battery (the attempted murder) was committed in Guatemala and not in Florida, and did not cause injury to Cortez in Florida, there can be no specific jurisdiction for this claim, as the cause of action is not one "arising from" a tortious act committed within the state.

Cortez acknowledges that no element of the assault and battery intentional tort occurred in Florida, but counters that the assault and battery is *not* the "tortious act" conferring specific jurisdiction under the long-arm statute. Rather, Cortez argues that the tortious act establishing specific jurisdiction is the conspiracy that Bantrab and its Directors undertook in the State of Florida.

The significant problem, however, with Cortez's argument is that Florida does not recognize civil conspiracy as a freestanding tort. SFM Holdings Ltd. v. Banc of Am. Secs., LLC, 764 F.3d 1327, 1338-39 (11th Cir. 2014) (applying Florida law). The gist of a civil conspiracy is not the conspiracy itself, but the underlying civil wrong occurring pursuant to the conspiracy and which results in the plaintiff's damages. Marriott Int'l, Inc. v. Am. Bridge Bahamas, Ltd., 193 So.

16

3d 902, 909 (Fla. 3d DCA 2015). The conspiracy does not give rise to an independent cause of action, but is a device to allow a plaintiff to spread liability to those involved in causing the underlying tort. Lorillard Tobacco Co. v. Alexander, 123 So. 3d 67, 80 (Fla. 3d DCA 2013) (observing: "Conspiracy is not a separate or independent tort but is a vehicle for imputing the tortious acts of one coconspirator to another to establish joint and several liability.") (quoting Ford v. Rowland, 562 So. 2d 731, 735 n.2 (Fla. 5th DCA 1990)).[9] The conspiracy, therefore, is inextricably linked with the underlying tort. Blatt v. Green, Rose, Kahn & Piotrkowski, 456 So. 2d 949, 950-51 (Fla. 3d DCA 1984).

Just as the alleged conspiracy – alone and in isolation – is not actionable independently from the underlying tort, we similarly conclude that the conspiracy alleged by Cortez, standing alone, does not provide a sufficient basis to confer specific jurisdiction under section 48.193(1)(a)(2) to adjudicate the assault and battery. This is especially true here when not a single element of the underlying assault and battery is alleged to have occurred in Florida.

We cannot read section 48.193(1)(a)'s dual requirements – *both* that a defendant does an enumerated act in Florida *and* that the cause of action arises from an enumerated act in Florida –  as authorizing the exercise of specific

---

[9] This is not a case involving an allegation of anti-competitive conduct where an independent conspiracy tort has been recognized. See, e.g., Buckner v. Lower Keys Hosp. Dist., 403 So. 2d 1025, 1029 (Fla. 3d DCA 1981).

17

jurisdiction when the only tort relied upon to confer such jurisdiction is a civil conspiracy to commit a tort, and *no* element of the underlying tort is alleged to have occurred in Florida. Cortez has not provided us with, and we have not been able to locate, any authority for the proposition that Florida's long-arm statute confers such specific jurisdiction upon a Florida court. We decline Cortez's invitation to be the first Florida court to determine that the connexity requirement is met under such circumstances. We therefore conclude that Cortez's allegations are insufficient to confer specific jurisdiction under section 48.192(1)(a)(2) to adjudicate Cortez's assault and battery claim against Bantrab.[10]

b. Operating a business venture in Florida – section 48.192(1)(a)(1)

Cortez also argues that the trial court has specific jurisdiction to adjudicate Cortez's assault and battery claim against Bantrab under section 48.193(1)(a)(1), because Cortez has alleged that Bantrab is conducting business in Florida, and the attack on Cortez arose out of such activities. Our reading of this Court's connexity requirement jurisprudence, however, obviates the need for us to evaluate whether

---

[10] Because our holding in this regard is focused on <u>Venetian Salami</u>'s first prong – i.e., whether sufficient jurisdictional facts exist to bring the action within Florida's long-arm statute – we need not, and therefore do not, reach the due process prong of the <u>Venetian Salami</u> test. We do note, though, that recent constitutional jurisprudence suggests that, to comply with the Fourteenth Amendment's due process requirement, a state court may exercise specific jurisdiction over a non-resident defendant only when the complained-of injury actually occurs in the forum state. <u>See</u> <u>Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.</u>, 137 S.Ct. 1773 (2017).

18

Cortez's allegations regarding Bantrab's business activities are sufficient to confer jurisdiction to adjudicate Cortez's tort claim. Because we have determined that Cortez has not met the connexity requirement conferring jurisdiction to adjudicate Cortez's assault and battery tort, Bantrab's business activities are irrelevant. Small v. Chicola, 929 So. 2d 1122, 1125 n.1 (Fla. 3d DCA 2006); Elmlund v. Mottershead, 750 So. 2d 736, 737 n.2 (Fla. 3d DCA 2000).

Therefore, we reverse that portion of the trial court's order concluding that it had specific jurisdiction over Bantrab under Florida's long-arm statute to adjudicate Count VIII.

2. Florida RICO (Count XVI)

In Count XVI, Cortez alleged that Bantrab's conduct is actionable under Florida's RICO statute. While not entirely clear, it seems that, notwithstanding the trial court's dismissal of this claim without prejudice requiring Cortez to file a more definite statement, the trial court's March 14, 2017 order nonetheless determined that Cortez's allegations were sufficient to confer specific jurisdiction under section 48.193(1)(a) for the trial court to adjudicate this claim.

Because the trial court had dismissed the claim, it was premature for the trial court to reach the jurisdictional issue. Until it had first been determined that Cortez could state a cause of action for Florida RICO against Bantrab, the trial court was

19

unable to determine the question of specific jurisdiction. As the Florida Supreme

Court observed in Wendt:

> The threshold question that must be determined is whether the allegations of the complaint state a cause of action. Cf. 8100 R.R. Ave. Realty Trust v. R.W. Tansill Constr. Co., 638 So. 2d 149, 1515 (Fla. 4th DCA 1994) (where the threshold question of personal jurisdiction turns on whether a tort is committed in Florida, the court necessarily must review the allegations of the complaint to determine if a cause of action is stated); Silver [v. Levinson], 648 So. 2d [240] at 241 [(Fla. 4th DCA 1994)] (same).

Wendt, 822 So. 2d at 1260.

Indeed, as indicated above in footnote 4, the trial court, after apparently

determining that it could exercise personal jurisdiction over Bantrab to adjudicate

Cortez's Florida RICO claims, sometime later determined that Cortez could not

state a Florida RICO cause of action against Bantrab, and dismissed that claim

with prejudice. Hence, to the extent that the trial court's March 14, 2017 order

purported to determine that the trial court had specific jurisdiction over Bantrab to

adjudicate Cortez's Florida RICO claim, we reverse that part of the order as being

premature.

**V. Conclusion**

We therefore: (i) reverse the trial court's order finding general jurisdiction

over Bantrab for Count VIII alleging assault and battery and Count XVI alleging

Florida RICO violations, and, to the extent it may be necessary, remand for further

proceedings consistent with this opinion, including a determination as to whether

20

the court can assert general personal jurisdiction over Bantrab applying the constitutional due process standard announced in <u>Goodyear</u> and <u>Daimler</u>; (ii) reverse the trial court's order finding specific jurisdiction over Bantrab for Count VIII; and (iii) reverse, as premature, that portion of the trial court's order purporting to find specific jurisdiction over Bantrab for Count XVI.

Reversed with instructions.