# Third District Court of Appeal

## State of Florida

Opinion filed November 18, 2020.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D19-2193
Lower Tribunal No. 18-40544
_____

**Vadim Piazenko, et al.,**
Appellants,

vs.

**Pier Marine Interiors GMBH, etc.,**
Appellee.

An Appeal from non-final orders from the Circuit Court for Miami-Dade County, Beatrice Butchko, Judge.

Mrachek, Fitzgerald, Rose, Konopka, Thomas & Weiss, P.A., and Alan B. Rose, Gregory S. Weiss, and George P. Kastrenakes (West Palm Beach), for appellants.

Osorio Internacional, P.A., and Carlos F. Osorio, Felipe Awad, Raúl A. Reichard, and Evelyn M. Barroso, for appellee.

Before FERNANDEZ, HENDON, and LOBREE, JJ.

HENDON, J.

Vadim Piazenko ("Piazenko") and UAB Aros Marine ("Aros Marine") (collectively, "Defendants") seek to reverse the trial court's non-final orders denying their motions to dismiss for lack of jurisdiction. We reverse as to both Piazenko and UAB Aros Marine, as there are insufficient jurisdictional facts to support either specific or general jurisdiction over the defendants under Florida's long-arm statute or federal due process requirements.

Facts

Aros Marine[1] is a Lithuanian company whose business is refurbishing interiors of large yachts, fishing vessels, and cruise ships, as well as new ship construction. Aros Marine operates mainly in Europe. Piazenko is a Lithuanian citizen who is a 40% co-owner of Aros Marine and currently serves as its marketing director. The plaintiff below, Pier Marine Interiors Germany ("PMI Germany"), is a German corporation whose principal is Morten Haderup ("Haderup"). PMI Germany is in essentially the same business as Aros Marine and is also based in Europe. Neither PMI Germany nor Aros Marine do business in Florida or in the United States, which is why, in November 2016, Piazenko, Giedrius Valainis ("Valainis"),[2] and Haderup

---

[1] Non-party UAB Aros International is the Lithuanian parent corporation of Aros Marine. UAB Aros International's operations are based primarily in Europe.

[2] Valainis is a named defendant in the lower tribunal action. Valainis, a Lithuanian citizen, is co-owner of Aros Marine, but has not been served and is not a party to this appeal.

created Pier Marine Interiors Florida ("Pier Marine Florida") as a joint venture. Its purpose was to establish a cruise ship interior refurbishment business based in Florida for projects to be performed in the United States.[3] Pier Marine Florida is owned, in equal parts, by PMI Germany and Aros Marine. Piazenko, Valainis, and Haderup were the directors of Pier Marine Florida at its inception in November 2016.

In connection with the November 2016 formation of Pier Marine Florida, Piazenko rented office space in Miami-Dade, hired attorneys to do the corporate paperwork, opened a Florida corporate bank account and was a signatory on that account together with Haderup and Valainis, created the corporate website and email accounts, and had business cards made for Pier Marine Florida embossed with the directors' names and a Miami address. After the formation of Pier Marine Florida, Piazenko, on behalf of both Aros Marine and Pier Marine Florida, continued to solicit business from certain cruise lines with Florida offices (not necessarily Florida corporations). None of those solicitations resulted in business for Aros or Pier Marine Florida.

---

[3] The parties disagree as to the geographic scope of Pier Marine Florida's business. Aros Marine asserts that Pier Marine Florida's business was to be confined to the United States, Florida in particular, while Pier Marine Florida states that its business was to be worldwide. Pier Marine Florida's assertion that it was a joint venture created to compete worldwide in the same industry as its co-parent companies is questionable.

PMI Germany subsequently brought a derivative action in Miami-Dade County circuit court alleging that the Defendants used PMI Germany's information to improperly compete with Pier Marine Florida by soliciting and diverting millions of dollars of cruise ship refurbishment business opportunities from PMI Germany's clients and customers for the benefit of Aros Marine, thereby violating their fiduciary duty to Pier Marine Florida.[4] Pier Marine Florida sought long-arm jurisdiction over the Defendants pursuant to section 48.193 (1)(a)1., 2., and 6., Florida Statutes (2019).[5]

---

[4] The complaint against Piazenko, Valainis, and Aros Marine includes the following claims: Count 1, breach of fiduciary duty by Piazenko; Count 2, breach of fiduciary duty by Valainis; Count 3, usurping a business opportunity by Piazenko; Count 4, usurping a business opportunity by Valainis; Count 5, aiding and abetting breach of fiduciary duty by Aros Marine; Count 6, civil conspiracy against all defendants; Count 7, accounting. Each of these claims recites essentially the same language.

[5] Section 48.193(1)(a) (specific jurisdiction) provides, in part:

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> 2. Committing a tortious act within this state.
> . . . .
>
> 6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

4

In response to Pier Marine Florida's allegations, Piazenko and Valainis resigned as directors of Pier Marine Florida on September 19, 2018. The Defendants filed motions to dismiss for lack of jurisdiction. The Defendants do not deny that Aros Marine engaged in refurbishment work in competition with Pier Marine Florida, but assert that Pier Marine Florida "was formed solely to pursue the cruise ship refurbishment market within the United States of America and its territory was not worldwide." Aros Marine, on the other hand, performed work solely outside of the United States, and in some cases had pre-existing contracts for those projects.

The record shows that, prior to the November 2016 formation of Pier Marine Florida, Piazenko attended trade shows in Florida and solicited business as the marketing director for Aros Marine. Pier Marine Florida lists these pre- and post-formation contacts as support for finding sufficient Florida contacts to subject Piazenko to specific and general jurisdiction, as follows:

- Piazenko and Valainis visited Miami on behalf of Aros Marine for the Seatrade Fair in Miami Beach in 2015 (pre-Pier Marine Florida formation).

- Piazenko went to Orlando, Florida, in 2015 on behalf of Aros Marine to meet with and solicit business from a Disney Cruise Line representative (pre-Pier Marine Florida formation).

- During a trip to Miami in 2016, Piazenko met with clients of Aros Marine.

a. The defendant was engaged in solicitation or service activities within this state; . . . .

5

- Piazenko used Aros Marine advertising materials and business cards during the Seatrade Fair in 2016.

- Piazenko acknowledged that he has solicited business from Carnival Cruise Lines in Miami on behalf of Aros Marine.

- A February 2016 email from Piazenko to Stephen Fryers at Carnival in Miami indicated that Piazenko would be attending the Seatrade Cruise Fair and requested a meeting with Carnival to present Aros Marine to Carnival (pre-Pier Marine Florida formation).

- Piazenko acknowledged that he has solicited business from Norwegian Cruise Lines in Miami on behalf of Aros Marine.

- A March 2016 email from Piazenko to Mr. Kansley at Norwegian discussed business opportunities for Aros Marine and coordinated a meeting in Miami (pre-Pier Marine Florida formation).

- An April 2016 email from Piazenko to Boris Ruskovsky, who works in Florida for Norwegian, stated that Aros Marine "would be glad to become your partner for refurbishment service of your vessels" and attached an Aros Marine brochure for Mr. Ruskovsky (pre-Pier Marine Florida formation).

- A November 2016 email from Piazenko to Mr. Fryers at Carnival in Miami soliciting business opportunities for Aros Marine and coordinating a meeting in Miami with Carnival.

- Piazenko confirmed that Aros Marine is doing work for Royal Caribbean ships.

- Piazenko acknowledged that he visited Carnival's offices on November 30, 2016 in Miami to solicit on behalf of Pier Marine Florida.

- Piazenko did not attend the Seatrade Fair in Miami in 2018 or 2019 but did have an Aros Marine representative attend the Seatrade Fair in 2019.

After hearing arguments at the October 18, 2019 hearing on the Defendants' motions to dismiss for lack of personal jurisdiction, the trial court denied both motions based on PMI Germany's arguments at the hearing and ordered the Defendants to answer the complaint. The Defendants' non-final appeal followed.

Standard of Review

A trial court's ruling on a motion to dismiss for lack of personal jurisdiction is reviewed de novo. Wendt v. Horowitz, 822 So.2d 1252, 1256–57 (Fla. 2002); Castillo v. Concepto Uno of Miami, Inc., 193 So. 3d 57, 59 (Fla. 3d DCA 2016).

Discussion

PMI Germany bears the initial burden of alleging sufficient allegations to bring the action within the ambit of Florida's long-arm statute, section 48.193 of the Florida Statutes. See Banco de los Trabajadores v. Cortez Moreno, 237 So. 3d 1127, 1132 (Fla. 3d DCA 2018). In determining whether a foreign citizen or corporation is subject to long-arm jurisdiction in this state, the trial court must make two separate inquiries: whether the complaint alleges sufficient facts to bring the cause of action within the purview of Florida's long-arm statute (specific jurisdiction), and, if so, whether the foreign citizen or corporation has sufficient minimum contacts with Florida to satisfy federal constitutional due process requirements (general jurisdiction). Doe v. Thompson, 620 So. 2d 1004 (Fla. 1993); Venetian Salami Co.

7

v. Parthenais, 554 So. 2d 499 (Fla. 1989); Fleming & Weiss, P.C. v. First Am. Title Ins. Co., 580 So. 2d 646 (Fla. 3d DCA 1991).

**A. Specific Jurisdiction -- Piazenko**.

"Specific" jurisdiction is claim-specific. A Florida court may exercise "specific" jurisdiction over a nonresident defendant in those cases in which it is alleged that the nonresident defendant commits any of the specific acts enumerated in the statute in Florida, so long as the cause of action arises from that enumerated act committed in Florida. See § 48.193(1)(a) 1.–9., Fla. Stat. (2019). The provisions of Florida's long-arm statute governing specific jurisdiction expressly require allegations that: (i) the defendant does one of the enumerated acts <u>within</u> Florida, **and** (ii) the plaintiff's cause of action "arise from" one of the enumerated acts occurring <u>in Florida</u>. See § 48.193(1)(a), Fla. Stat. (2019). These dual requirements—that the defendant's conduct occur in Florida and that the plaintiff's cause of action arises from such Florida activity—are known as the statute's connexity requirement. <u>Banco de los Trabajadores</u>, 237 So. 3d at 1135. This requires a causal connection between the defendant's activities in the forum state and the plaintiff's cause of action. In analyzing whether tortious conduct has occurred within Florida, courts have looked to whether the nonresident defendant "committed a substantial aspect of the alleged tort in Florida." <u>Watts v. Haun</u>, 393 So. 2d 54, 56 (Fla. 2d DCA 1981); <u>see also</u> <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 411 n. 8 (1984).

8

Although PMI Germany alleged Piazenko had contacts with Florida, the factual allegations in the complaint and supplemental pleadings are insufficient to support finding Piazenko committed a tort in Florida, and Piazenko's contacts with the state evidence no connection with the alleged causes of action necessary to establish specific jurisdiction over him. In its response to Piazenko's motion to dismiss for lack of jurisdiction, Pier Marine Florida sought to contradict Piazenko's affidavit in order to establish specific personal jurisdiction over him pursuant to section 48.193(1)(a)2. (committing a tortious act within the state) and 48.193(1)(a)6. (causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, while engaged in solicitation within this state ). Piazenko's acts of setting up and obtaining rental space for the newly-formed Pier Marine Florida, opening the corporate bank account, and engaging Florida attorneys for the company, do not demonstrate that a requisite tort occurred in Florida. The Defendants' 2015 contacts with Florida, prior to the formation of Pier Marine Florida, are irrelevant to any alleged tort committed against Pier Marine Florida. Some of the post-formation solicitation alleged in the complaint resulted in business for Aros Marine, but the record indicates that those projects were located outside of the United States.

PMI Germany alleges that Piazenko used PMI Germany's client list to solicit business for Aros Marine while acting as a director for Pier Marine Florida,

9

committing the intentional tort of interference with a business relationship and breach of fiduciary duty. There is nothing in the record to support the allegation that the cruise ship companies contacted by Piazenko, either in person at a trade show or via email from Aros Marine while he was a director at Pier Marine Florida, were existing clients of Pier Marine Florida or PMI Germany. In fact, the complaint itself suggests that the alleged tortious actions occurred not only outside of Florida, but outside of the United States, and not by Piazenko personally but in his capacity as marketing director for Aros Marine. There is no evidence in the record that Piazenko usurped PMI Germany's clients or business opportunities, or more importantly, that any of the alleged tortious acts occurred in Florida. The intentional tort allegations in the complaint are insufficient to justify the exercise of specific jurisdiction over the defendant Piazenko.

### B. General Jurisdiction -- Piazenko.

PMI Germany sought to establish general jurisdiction over defendant Piazenko pursuant to section 48.193(2), Florida Statutes (2019). A Florida court has "general" jurisdiction over a nonresident defendant when the defendant has "engaged in substantial and not isolated activity within this state." Id. In order to satisfy the second, constitutional, requirement for assertion of jurisdiction, the trial court must consider "whether the defendant has sufficient minimum contacts with the state so that the exercise of jurisdiction would not offend traditional notions of fair play and

10

substantial justice." Venetian Salami, 554 So. 2d at 502. "Factors that go into determining whether sufficient minimum contacts exist include the foreseeability that the defendant's conduct will result in suit in the forum state and the defendant's purposeful availment of the forum's privileges and protections." Id. at 502 ("[t]he mere proof of any one of the several circumstances enumerated in section 48.193 as the basis for obtaining jurisdiction of nonresidents does not automatically satisfy the due process requirement of minimum contacts").

PMI Germany provided evidence to show that Piazenko attended two or three trade shows in Miami or requested meetings with representatives from Carnival and Norweigan Cruise Lines in order to make a presentation for Aros Marine or Pier Marine Florida. These emails show dates that were either prior to the formation of Pier Marine Florida or were solicitations that did not result in meetings or work for Aros Marine. See Wendt v. Horowitz, 822 So. 2d 1252, 1256–57 (Fla. 2002) (holding that "telephonic, electronic, or written communications into Florida may form the basis for personal jurisdiction under section 48.193(1)(b)6 if the alleged cause of action arises from the communications") (emphasis added). Significantly, the items the plaintiff submits as proof that the Defendants are subject to general jurisdiction show the opposite. For example, Aros Marine did work in France for Royal Caribbean, a project negotiated in Europe. Aros Marine was a subcontractor for Pier Marine Florida on a job in the Grand Bahamas and was a subcontractor to an Italian

11

shipyard working on a ship owned by Norwegian Cruise Lines. Those revenues did not arise out of any contract with a Florida cruise line, and any revenues came from an Italian shipyard contract in Italy. None of the alleged Florida "contacts" resulted in any contracts or revenues for Aros Marine or for Pier Marine Florida.

Defendant Piazenko's occasional physical presence in Florida to attend trade shows, or to make a one-off corporate solicitation of a cruise ship company whose office is in Miami (and which the plaintiff has not alleged to be a Pier Marine Florida client), do not show "substantial and not isolated" activity necessary to support exercise of general long-arm jurisdiction over Piazenko. See Price v. Point Marine, Inc., 610 So. 2d 1339, 1342 (Fla. 1st DCA 1991) (affirming dismissal for lack of jurisdiction over non-resident defendant where, "absent a continued and sustained effort to procure business, or actual procurement of business, these activities are insufficient to constitute substantial activities within the state of Florida"). The evidence submitted on de novo review is insufficient to bring Piazenko within the scope of Florida's long-arm statute.

## C. <u>Long-Arm Jurisdiction – Aros Marine.</u>

Sufficient allegations of general jurisdiction do not require any showing that the cause of action arises from the defendant's activity in the state. § 48.193(2). Fla. Stat. (2019). With that in mind, however, "substantial and not isolated activity within this state," has been construed to mean a showing of "continuous and systematic

general business contact" with the state. Vos, B.V. v. Payen, 15 So. 3d 734, 736 (Fla. 3d DCA 2009); Gadea v. Star Cruises, Ltd., 949 So. 2d 1143, 1145 (Fla. 3d DCA 2007) (quoting Carib–USA Ship Lines Bahamas, Ltd. v. Dorsett, 935 So. 2d 1272, 1275 (Fla. 4th DCA 2006) and Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984)); Bafitis v. Ara, 815 So. 2d 702, 703 (Fla. 3d DCA 2002). The requirement of continuous and systematic general business contacts "must be 'extensive and pervasive, in that a significant portion of the defendant's business operations or revenue [are] derived from established commercial relationships in the state.'" Taylor v. Gutierrez, 129 So. 3d 415, 419 (Fla. 3d DCA 2013) (quoting Caiazzo v. Am. Royal Arts Corp., 73 So. 3d 245, 259 (Fla. 4th DCA 2011)) (additional citations omitted).

The evidence presented to the trial court at the hearing on Aros Marine's motion to dismiss shows that Aros Marine does not have continuous or systematic contacts with Florida and generates no revenue from Florida. Aros Marine has no offices in Florida, and it has never been licensed to do business in Florida. Aros Marine has no employees working in the state, and it has no real property in Florida. Aros Marine's only contacts with Florida were occasional solicitation of business from cruise ship companies.[6] Aros Marine agreed that it sent letters to prospective

---

[6]Although many cruise ship companies have offices in Florida, many are not Florida corporations, and any actual refurbishment projects for purposes of this case were performed outside of the U.S.

13

clients who were in the market for the kinds of services Aros Marine provides. There is no indication in the record, however, that any of those solicitations were accepted, or that Aros Marine formally bid on any contract as a result of those solicitations, or that Aros Marine generated any business or revenue in Florida while Aros Marine was a joint partner with PMI Germany. Of the alleged contacts Aros Marine made with a cruise ship company after the formation of Pier Marine Florida, one was made on behalf of Pier Marine Florida, and the other was made after the Defendants had resigned as directors of Pier Marine Florida. Sporadic activities or visits will not constitute "substantial and not isolated activity." Spanier v. Suisse–Outremer Reederei, 557 So. 2d 83 (Fla. 3d DCA 1990); Ranger Nationwide, Inc. v. Cook, 519 So. 2d 1087 (Fla. 3d DCA 1988). Aros Marine had only sporadic and passing contact with cruise lines operating out of Florida prior to the formation of Pier Marine Florida, and post-Pier Marine Florida's formation, Aros Marine did not generate business from a Florida contact in any sense that we could conclude that its affiliations with Florida are so "continuous and systematic' as to render [it] essentially at home in the forum State."[7] Daimler AG v. Bauman, 571 U.S. 117, 127 (2014).

_____

[7] The constitutional due process standard for determining general jurisdiction changed significantly with the United States Supreme Court's decisions in Daimler AG v. Bauman, 571 U.S. 117 (2014), and Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915 (2011). In Daimler, the Court held that "approv[ing] the

For these reasons, we reverse the trial court's order denying the motions to dismiss for lack of personal jurisdiction and remand for entry of orders dismissing the complaint against Aros Marine and Piazenko for lack of personal jurisdiction.

Reversed and remanded.

exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business' . . . [represents a] formulation [that is] unacceptably grasping." Id. at 761. Instead, Daimler reaffirmed the principle announced earlier in Goodyear: "[T]he inquiry under Goodyear is not whether a foreign corporation's in-forum contacts can be said to be in some sense "continuous and systematic," it is whether that corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." Id. at 761 (quoting Goodyear, 564 U.S. at 919); Banco de los Trabajadores v. Cortez Moreno, 237 So. 3d 1127, 1134 (Fla. 3d DCA 2018).

15