TAYLOR, J.
NHB Advisors, Inc. (“NHB”), the plaintiff in an underlying suit against multiple defendants for various claims in connection with the sale of a corporation, appeals an order granting defendant Joseph Czyzyk’s motion to dismiss for lack of personal jurisdiction. Because the plaintiff successfully alleged the existence of a conspiracy and Czyzyk’s participation in it, and because the plaintiffs successfully alleged that other members of the conspiracy committed a tortious act in Florida, we reverse.

Factual Background

Before filing for bankruptcy protection under Chapter 11 in June 2009, Butler Services International, a Maryland corporation with a headquarters in Fort Laud- *446 erdale, Florida, was engaged in the business of providing outsourcing, project management, and staff services to clients.
The plaintiff, NHB, as the liquidator of the Butler Liquidating Trust for Butler Services International and related corporations (collectively “Butler”), filed an Amended Complaint against McBreen & Kopko (“M & K”), Czyzyk, and a number of other defendants, including Butler’s officers and directors, for claims related to the management and ultimate sale of Butler. The gravamen of the complaint is that several of the defendants participated in a conspiracy to purchase Butler’s assets for far below their value or, failing that, to set up a competing company which would steal business from Butler using confidential information obtained from Butler. Czyzyk, a California resident, is the President and CEO of Mercury Air Group, a California corporation that unsuccessfully offered to purchase Butler’s assets.
The amended complaint alleged that, starting at least as early as December 2008, Edward Kopko, the CEO of Butler, provided confidential information to Czy-zyk and to Frederick Kopko, a partner at M & K and a board member at various Butler entities, as part of a conspiracy to either acquire Butler very inexpensively or to take key Butler employees and compete with Butler. The purportedly confidential information included details regarding Butler’s employees — such as their salaries, locations, and job descriptions — as well as details on the leases Butler held on all its locations in the United States. Edward sent an e-mail to Frederick and Czyzyk, attaching a spreadsheet that contained data on all of Butler’s U.S.-based staff. The spreadsheet was password-protected, but Edward provided Frederick and Czy-zyk with the password to open the document. Frederick, in turn, was allegedly “the lynchpin in the transmission of Butler confidential, password protected information consisting of Butler’s employees to Mercury.”
In February 2009, while he was already in Miami on unrelated business on behalf of Mercury, Czyzyk drove to Fort Lauder-dale and had dinner with Edward. Czyzyk claimed in an affidavit that the purpose of the dinner was to extend his condolences with respect to Edward’s wife’s passing, which had occurred four to five years earlier. During this dinner, Czyzyk and Edward discussed Mercury’s potential purchase of Butler. The amended complaint alleged that the “purchase” discussed was “no more than conspirators discussing how Mercury could steal Butler’s business.”
On March 5, 2009, Edward made a bid on behalf of Mercury to be assigned all of Butler’s customer relationships for no money, but for some sort of earn out that could be used to pay the lenders above the amount of the accounts receivable which the lenders could liquidate. However, Butler’s secured lenders rejected the offer. The next day, March 6, 2009, Edward and Frederick resigned from Butler, taking several senior Butler sales executives with them. On March 7, 2009, Edward and a Mercury subsidiary called “Mercury Z” began soliciting Butler’s customers. Using the employee lists, Edward and Mercury Z were able to take away some of Butler’s consultants and customers.
In June 2009, Butler filed for bankruptcy protection under Chapter 11. Butler was later sold for $27 million, which was lower than previous offers that had been made before Edward left the company.

Claims Against Czyzyk

The amended complaint alleges two causes of action against Czyzyk. Count VI is against Czyzyk and Mercury for aiding and abetting breach of fiduciary duty by acting “improperly and without privilege with the purpose of materially aiding and *447 assisting Edward’s and Frederick’s breach of fiduciary duty to Butler.”
Count VII alleges a conspiracy to breach fiduciary duty against Czyzyk and other defendants. Count VII alleges that Edward, Frederick, Czyzyk, Mercury, and M & K conspired to breach Edward’s and Frederick’s fiduciary duties to Butler “by collectively concocting the plan to use Butler’s confidential information, stolen by password protected e-mail, to structure a competing company to Butler, all while Edward and Frederick were officers and directors of Butler.” Count VII further alleges that the conspiracy was successful in taking clients from Butler and, as a result, Butler was damaged.

Jurisdictional Allegations Regarding Czyzyk’s Contacts with Florida

The amended complaint alleged that jurisdiction was proper over Czyzyk under section 48.193(l)(b), Florida Statutes, because he committed a tortious act within this state. The amended complaint contains two factual allegations against Czy-zyk that are relevant for jurisdictional purposes: (1) he was the recipient of e-mail with confidential data on Butler employees; and (2) he met with Edward in Fort Lauderdale — during the time that he and several other defendants were conspiring to have Mercury steal Butler’s business using Butler’s confidential information — to discuss how Mercury could steal Butler’s business.

Motions to Dismiss for Lack of Personal Jurisdiction

Both M & K and Czyzyk moved to dismiss for lack of personal jurisdiction. Czyzyk submitted an affidavit in support of his motion to dismiss. As noted above, Czyzyk acknowledged that he met with Edward in Fort Lauderdale to express condolences over the passing of Edward’s wife, but claimed that he only briefly discussed the potential sale of Butler, that he spoke on behalf of Mercury, and that there was nothing tortious about the nature of the discussions. Czyzyk also acknowledged speaking with Edward approximately one time on the telephone regarding Mercury’s potential acquisition of Butler, but denied making any tortious communications into Florida. Czyzyk further stated that over the last four years, in his capacity as CEO of Mercury, he visited customers in Florida approximately twelve to fourteen times. However, none of these visits were related to the subject matter of this lawsuit. Czyzyk has never been a resident of Florida and has no other contacts with Florida.
The trial court denied M & K’s motion to dismiss,[1] but granted Czyzyk’s motion. The court appeared to reason that the amended complaint did not sufficiently allege that Czyzyk engaged in tortious conduct in Florida. This appeal followed.

Analysis

A trial court’s ruling on a motion to dismiss for lack of personal jurisdiction is reviewed de novo. Wendt v. Horowitz, 822 So.2d 1252, 1256-57 (Fla.2002).
In Venetian Salami Co. v. Parthenais, 554 So.2d 499 (Fla.1989), the Florida Supreme Court articulated a two-step analysis to determine whether personal jurisdiction exists over a nonresident defendant. First, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of Florida’s long-arm statute, section 48.193, Florida Statutes. Id. at 502. Second, if the long-arm statute is applicable, the next *448 inquiry is whether sufficient “minimum contacts” are demonstrated to satisfy due process requirements. Id. “Both parts must be satisfied for a court to exercise personal jurisdiction over a non-resident defendant.” Am. Fin. Trading Corp. v. Bauer, 828 So.2d 1071, 1074 (Fla. 4th DCA 2002).
“Initially, the plaintiff may seek to obtain jurisdiction over a nonresident defendant by pleading the basis for service in the language of the statute without pleading the supporting facts.” Venetian Salami, 554 So.2d at 502. “A defendant wishing to contest the allegations of the complaint concerning jurisdiction or to raise a contention of minimum contacts must file affidavits in support of his position. The burden is then placed upon the plaintiff to prove by affidavit the basis upon which jurisdiction may be obtained.” Id. If the affidavits can be harmonized, the court can resolve the jurisdiction issue based upon facts which are essentially undisputed. Id. at 502-03.
Pursuant to Florida’s long-arm statute, a nonresident defendant may be subject to specific jurisdiction under section 48.193(1), Florida Statutes, where the person commits any of the acts enumerated in the subsection within Florida and the cause of action arose from the act. A Florida court has specific jurisdiction over a defendant who commits “a tortious act within this state.” § 48.193(1)(b), Fla. Stat.
The inquiry under the statutory prong of Venetian Salami is not whether the tort actually occurred, but whether the tort, as alleged, occurred in Florida. See Hunt v. Cornerstone Golf, Inc., 949 So.2d 228, 230 (Fla. 4th DCA 2007). In analyzing whether tortious conduct has occurred within Florida, courts have looked to whether the nonresident defendant “committed a substantial aspect of the alleged tort in Florida.” Watts v. Haun, 393 So.2d 54, 56 (Fla. 2d DCA 1981). A defendant’s physical presence in this state is not required. Wendt, 822 So.2d at 1260.
Moreover, if a plaintiff has successfully alleged a cause of action for conspiracy among the defendants to commit tor-tious acts toward the plaintiff, and if the plaintiff has successfully alleged that any member of that conspiracy committed tor-tious acts in Florida in furtherance of that conspiracy, then all of the conspirators are subject to the jurisdiction of Florida through its long-arm statute. See Wilcox v. Stout, 637 So.2d 335, 337 (Fla. 2d DCA 1994); see also Elandia Int’l, Inc. v. Ah Koy, 690 F.Supp.2d 1317, 1330 (S.D.Fla.2010) (“If an individual successfully alleges that any member of a conspiracy committed tortious acts in Florida in furtherance of the conspiracy, then all of the conspirators are subject to personal jurisdiction in Florida.”). However, a court will decline to apply the co-conspirator theory to extend jurisdiction over nonresidents if the plaintiff fails to plead with specificity any facts supporting the existence of the conspiracy and provides nothing more than vague and conclusory allegations regarding a conspiracy involving the defendants. See Washington v. Fla. Dep’t of Children and Families, 595 F.Supp.2d 1291, 1295 (M.D.Fla.2009).
Here, the plaintiff pleaded with specificity facts supporting the existence of a conspiracy. Indeed, the plaintiff pleaded more than vague and conclusory allegations. The amended complaint alleged that Czyzyk, along with other co-defendants, conspired to breach Edward’s and Frederick’s fiduciary duties to Butler “by collectively concocting the plan to use Butler’s confidential information, stolen by password protected e-mail, to structure a competing company to Butler, all while Edward and Frederick were officers and *449 directors of Butler.” Further, the amended complaint contains two specific factual allegations against Czyzyk that are relevant for jurisdictional purposes: 1) he was the recipient of e-mail with confidential data on Butler employees; and 2) he met with Edward in Fort Lauderdale — during the time that he and several other defendants were conspiring to have Mercury steal Butler’s business using Butler’s confidential information — to discuss how Mercury could steal Butler’s business.
While Czyzyk’s mere receipt of confidential information about Butler may not have been tortious in and of itself, the factual allegation that Edward sent him confidential information about Butler does tend to demonstrate at least a colorable claim of the existence of a conspiracy and Czyzyk’s participation in it. And, although Czyzyk claimed in his affidavit that there was nothing tortious about his meeting with Edward in Florida to discuss the potential sale of Butler, this does not defeat personal jurisdiction. Under the statutory prong, the relevant question is not whether the tort actually occurred, but whether the tort, as alleged, occurred in Florida. Czy-zyk did not dispute that this meeting with Edward occurred in Florida. Furthermore, regardless of whether Czyzyk personally committed any tortious acts within the state of Florida, the plaintiff alleged with sufficient specificity that Czyzyk took part in a conspiracy where other principals committed tortious acts in Florida.
Accordingly, because the plaintiff successfully alleged the existence of a conspiracy and Czyzyk’s participation in it, and because the plaintiffs successfully alleged that other members of the conspiracy committed a tortious act in Florida, all of the conspirators are subject to the jurisdiction of Florida through its long-arm statute.[2] Moreover, because Butler was a Florida resident, Czyzyk’s alleged participation in a conspiracy that aimed its tortious conduct at the state of Florida would allow Czyzyk to reasonably anticipate being haled into court in Florida. Therefore, exercising personal jurisdiction over Czyzyk does not offend due process.
Accordingly, we reverse the order granting Czyzyk’s motion to dismiss for lack of personal jurisdiction and remand for further proceedings.

Reversed.

MAY, C.J., and CIKLIN, J., concur.

. In a separate appeal, we affirmed the denial of M & K’s motion to dismiss for lack of personal jurisdiction. See McBreen & Kopko, LLP v. NHB Advisors, Inc., 2012 WL 2685054 (Fla. 4th DCA July 5, 2012).

. Even if Czyzyk's actions were on behalf of Mercury, a corporate officer who commits fraud or other intentional misconduct outside of Florida is not protected by the corporate shield doctrine. Kitroser v. Hurt, 85 So.3d 1084, 1088 n. 3 (Fla.2012). Here, Czyzyk cannot use the corporate shield doctrine against the plaintiff's intentional tort claims of aiding and abetting breach of fiduciary duty and conspiracy to breach fiduciary duty.