# Third District Court of Appeal

## State of Florida

Opinion filed August 29, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D16-1135 & 3D16-1146
Lower Tribunal No. 14-10016

_____

**Woodruff-Sawyer & Co.,**
Appellant/Cross-Appellee,

vs.

**Richard Ghilotti and Nancy Ghilotti, as the Co-Personal Representatives of the Estate of Dino R. Ghilotti, deceased,**
Appellees/Cross-Appellant.


Appeals from non-final orders from the Circuit Court for Miami-Dade County, Eric William Hendon, Judge.

Luks, Santaniello, Petrillo & Jones and Stuart L. Cohen and Edgardo Ferreyra, Jr., for appellant/cross-appellee.

Kreusler-Walsh Vargas & Serafin, P.A. and Jane Kreusler-Walsh, Rebecca Mercier Vargas and Stephanie L. Serafin (West Palm Beach); Deutsch & Blumberg, P.A. and Steven K. Deutsch, for appellees/cross-appellant.


Before SUAREZ, SALTER, and FERNANDEZ, JJ.

FERNANDEZ, J.

Appellant Woodruff-Sawyer & Co. ("Woodruff-Sawyer") appeals the lower court's April 18, 2016 non-final order denying Woodruff-Sawyer's motion to dismiss for lack of personal jurisdiction. Appellees Richard Ghilotti and Nancy Ghilotti (the "Ghilottis"), as the Co-Personal Representatives of the Estate of Dino R. Ghilotti, deceased,[1] separately appeal the lower court's April 18, 2016 order granting Woodruff-Sawyer's motion to dismiss for forum non-conveniens and motion to sever and the lower court's order denying the Ghilottis' motion for an additional stipulation. For the reasons stated below, we reverse the denial of Woodruff-Sawyer's motion to dismiss for lack of personal jurisdiction. The reversal renders the other issues on appeal moot.

This cause arises from an agreement to procure insurance between Woodruff-Sawyer and non-party Ghilotti Construction Company, Inc. ("Ghilotti Construction"), both with their principal places of business in California. Woodruff-Sawyer procured automobile insurance and excess automobile insurance from two non-party insurers for Ghilotti Construction. In May of 2013, the Ghilottis' son, Dino Ghilotti (the "Decedent"), died as a result of a motor vehicle collision in Coral Gables, Florida.[2] Subsequent to the Decedent's death, the

---

[1] Nancy Ghilotti has since passed away and is no longer a co-personal representative of the Estate.
[2] The Decedent was a passenger in a non-party's vehicle. The car insured under the policies relevant here was not involved.

2

Ghilottis sought compensation from various non-parties, the details of which are not relevant to the disposition of the jurisdictional issues on appeal.

On October 29, 2014, the Ghilottis filed an amended complaint alleging that Woodruff-Sawyer acted negligently in procuring said automobile insurance and breached its fiduciary duty in doing so. Specifically, the Ghilottis alleged that the insurance policies Woodruff-Sawyer procured did not provide sufficient and adequate underinsured motorist benefits to cover damages incurred as a result of the Decedent's death. With respect to jurisdiction, the amended complaint avers that at all relevant times Woodruff-Sawyer: (i) "was operating, conducting, engaging in, or carrying on an insurance broker and/or agency business in Florida;" (ii) "was a foreign corporation authorized to transact business in Florida and designated a Florida registered agent to accept service of process;" and (iii) "effectively committed tortious acts within Florida and directed at individuals in Florida, including [the Decedent]." The amended complaint also contains a recitation of facts describing an agreement between Woodruff-Sawyer and Richard Ghilotti, wherein Woodruff-Sawyer "agreed and undertook to act as the insurance broker and/or insurance agent for Richard Ghilotti and his company, Ghilotti Construction . . . [and procure automobile insurance] to fully cover [the Decedent] . . . [who] was an intended and third party beneficiary of the foregoing contract." Further, the Ghilottis alleged that Woodruff-Sawyer "knew or should have known

3

that [the Decedent] was a full-time . . . [student in] Miami-Dade County . . . [whose car] would be and was principally garaged in Miami-Dade County, Florida, while he was [a student]."

On December 3, 2014, Woodruff-Sawyer filed a motion to dismiss the amended complaint for lack of personal jurisdiction, supported by the affidavit of Zac Overbay, a Senior Vice President and shareholder of Woodruff-Sawyer on its behalf. On March 4, 2015, the Ghilottis filed a memorandum of law in opposition to said motion, supported by the affidavit of Richard Ghilotti. On March 6, 2015, Woodruff-Sawyer filed a reply to the opposition, as well as a motion to sever. On August 26, 2015, the lower court held a hearing on the same. On April 18, 2016, the lower court entered an order denying Woodruff-Sawyer's motion to dismiss for lack of personal jurisdiction. This appeal followed.

We review the lower court's order denying Woodruff-Sawyer's motion to dismiss for lack of personal jurisdiction *de novo*. See, e.g., Wendt v. Horowitz, 822 So. 2d 1252, 1256 (Fla. 2002). Our analysis is governed by a two-step inquiry for determining whether long-arm jurisdiction over a nonresident defendant is proper, consistent with the holding of Venetian Salami Co. v. Parthenias, 554 So. 2d 499 (Fla. 1989).

First, we must determine whether the Ghilottis alleged facts sufficient to bring the action within the ambit of Florida's long-arm statute. The first prong of

the analysis does not include due process considerations. Internet Sols. Corp. v. Marshall, 39 So. 3d 1201, 1215 (Fla. 2010) ("[The Florida Supreme Court has] never construed the first prong of the jurisdiction analysis with a constitutional overlay . . . [i]ssues of due process and fairness are properly considered in the second prong, which imposes a more restrictive requirement.") (internal quotations and citations omitted). To bring the cause within the ambit of the long-arm statute, the complaint may either allege facts sufficient to show that the defendant's actions fit within one or more of the subsections of the statute, or track the language of the statute. Fla. R. Civ. P. 1.070(i); Venetian Salami, 554 So. 2d at 502.

Second, if the first prong is satisfied, we must determine whether Woodruff-Sawyer has sufficient "minimum contacts," with Florida, to satisfy due process requirements. Personal jurisdiction takes two forms, general jurisdiction and specific jurisdiction, as detailed herein.

A motion to dismiss, without more, only challenges the legal sufficiency of the pleadings. In order to contest the complaint's jurisdictional allegations or to raise due process concerns, a defendant must file an affidavit or other sworn proof.

If the defendant's affidavit properly contests the basis for long-arm jurisdiction with legally sufficient facts, the plaintiff bears the burden to refute the proof in the defendant's affidavit with a supporting affidavit. If the relevant facts set forth in the respective affidavits directly conflict, then the trial judge must hold

5

a limited evidentiary hearing to resolve the factual dispute. Id. at 502-03; see also Belz v. Investco Ltd. P'ship v. Groupo Immobiliano Cababie, S.A., 721 So. 2d 787 (Fla. 3d DCA 1998).

On appeal, Woodruff-Sawyer argues the lower court erred in denying the motion to dismiss for lack of personal jurisdiction because the Ghilottis have failed to allege facts sufficient to warrant the imposition of personal jurisdiction under the long-arm statute, and because Woodruff-Sawyer does not have sufficient minimum contacts with Florida to satisfy the Due Process Clause of the United States Constitution.

Personal jurisdiction, unlike subject matter jurisdiction, is a waivable right. See, e.g., Burger King Corp. v. Rudzewicz, 471 U.S. 462 n.14 (1985); Babcock v. Whatmore, 707 So. 2d 702 (Fla. 1998). In certain circumstances, Florida law authorizes the exercise of personal jurisdiction based upon consent.[3] See, e.g., Fla. Stat. §§ 685.101 and 685.102; Jetbroadband WV, LLC v. Mastec N. Am., 13 So. 3d 159 (Fla. 3d DCA 2009).

---

[3] Although courts, in some cases, use the terms "consent" and "waiver" interchangeably, it is important to distinguish between instances in which the jurisdictional challenge is considered on the merits versus instances in which a defendant is precluded from asserting a jurisdictional defense. As discussed in Babcock, a court will not entertain a personal jurisdictional defense for a number of reasons, including, but not limited, failing to timely object to personal jurisdiction or seeking affirmative relief. 707 So. 2d at 704-05. In such cases, a court does not reach the due process analysis. However, where a jurisdictional challenge is properly entertained on its merits, the due process requirements of the United States Constitution must also be considered.

6

Section 48.091, Florida Statutes, requires every foreign corporation qualified to transact business in Florida to designate a registered agent for service of process. The Ghilottis argue Woodruff-Sawyer consented to personal jurisdiction in Florida by both obtaining a license to do business and designating a registered agent in Florida. As a threshold issue, it is important to clarify that although the Ghilottis frame the issue as one of "consent" to jurisdiction, in actuality the Ghilottis argue for the exercise of general jurisdiction over Woodruff-Sawyer.[4]

The Ghilottis rely primarily on three cases to support the proposition that both registration to do business and designation of a registered agent for service of process in Florida is sufficient, without more, to establish personal jurisdiction in Florida courts: White; Ulloa; and Cherry.

_____

[4] The Ghilottis do not argue, and the record does not support, that Woodruff-Sawyer should be precluded from contesting personal jurisdiction. The Ghilottis do not point to an agreement between the parties that confers personal jurisdiction on a Florida court, which could affect the due process analysis. See, e.g., Jetbroadband WV, LLC, 13 So. 3d at 163 ("Normally, courts review a number of factors to determine whether minimum contacts exist. However, in the commercial context, the Supreme Court has held that the minimum contacts standard is met if a forum-selection clause exists that is freely negotiated and is not unreasonable and unjust.") (internal quotations and citations omitted). Nor do the Ghilottis cite any Florida statute that explicitly states obtaining a license to do business and designating a registered agent, in Florida, are sufficient to satisfy due process requirements. Contra Bane v. Netlink, 925 F.2d 637, 640 (3d Cir. 1991) ("Pennsylvania law explicitly states that the qualification of a foreign corporation to do business is sufficient contact to serve as the basis for the assertion of personal jurisdiction . . . such registration by a foreign corporation carries with it consent to be sued in Pennsylvania courts.").

7

White and Ulloa are inapposite. See, e.g., Magwitch, LLC v. Pusser's W. Indies Ltd., 200 So. 3d 216, 218 (Fla. 2d DCA 2016). First, White addresses the sufficiency of service of process under section 48.081, Florida Statutes (1983), and does not address due process considerations.[5] White v. Pepsico, 568 So. 2d 886, 888 (Fla. 1990) ("The only question before this Court is whether White executed service of process on Pepsico pursuant to the requirements of the Florida Statutes."). Second, Ulloa does not involve issues of personal jurisdiction. Ulloa v. CMI, Inc., 133 So. 3d 914, 920 (Fla. 2013) ("This case clearly does not involve personal jurisdiction because [the non-party witness] is not a party to the action.").

Cherry[6] has yielded to subsequent precedent. Rose's Stores, Inc. v. Cherry, 526 So. 2d 749 (Fla. 5th DCA 1988). Cherry is inconsistent with both Florida's long-arm statute as well as the United States Supreme Court's decisions in Daimler AG v. Bauman, 571 U.S. 117 (2014), and Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915 (2011).[7]

_____

[5] Even if White had thoroughly addressed due process considerations, as we note below, subsequent precedent has since refined the constitutional due process standard for determining general jurisdiction.

[6] Cherry, 526 So. 2d 749, is one of a number of similarly situated cases. See, e.g., Dombroff v. Eagle-Picher Indus., Inc., 450 So. 2d 923 (Fla. 3d DCA 1984); Ranger Nationwide, Inc. v. Cook, 519 So. 2d 1087 (Fla. 3d DCA 1988); and Junction Bit & Tool Co. v. Institutional Mortg. Co., 240 So. 2d 879 (Fla. 4th DCA 1970).

[7] This Court has recognized that Daimler and Goodyear "significantly" changed the constitutional due process standard for determining general jurisdiction. Banco De Los Trabajadores v. Cortez Moreno, 237 So. 3d 1127, 1134 (Fla. 3d DCA 2018).

Section 48.193(2), Florida Statutes, provides a basis for asserting general jurisdiction over foreign corporations who are "engaged in substantial and not isolated activity within [Florida]."[8]  Florida courts have interpreted this statutory language to require "continuous and systematic" business contacts that are "extensive and pervasive."  See, e.g., Banco De Los Trabajadores, 237 So. 3d at 1134; Aegis Defense Servs., LLC v. Gilbert, 222 So. 3d 656, 659 (Fla. 5th DCA 2017); and Caiazzo v. Am. Royal Arts Corp., 73 So. 3d 245, 259 (Fla. 4th DCA 2011).  Here, the amended complaint does not track the language of section 48.193(2), nor does it allege facts sufficient to show that Woodruff-Sawyer engaged in substantial and not isolated activity within Florida.  The allegation that Woodruff-Sawyer "was a foreign corporation authorized to transact business in Florida and designated a Florida registered agent to accept service of process," without more, can hardly be described as substantial and not isolated activity.  Thus, the Ghilottis fail to even satisfy the first prong of the Venetian Salami test.

While we need not address the second prong, given the failure to satisfy the first, we note that the due process standard for the exercise of general jurisdiction is even more exacting.  Indeed, Daimler reiterated the due process inquiry undertaken in Goodyear, "whether that corporation's affiliations with the State are

[8] Section 48.193(2), Florida Statutes – A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

9

so continuous and systematic as to render [it] essentially at home in the forum State." 571 U.S. at 139 (quoting Goodyear, 564 U.S. at 919) (internal quotations omitted). Woodruff-Sawyer is not incorporated in Florida, does not maintain its principal place of business in Florida, and is not so heavily engaged in activity in Florida as to render it essentially at home in Florida. See also BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549 (2017). The exercise of general jurisdiction, in this instance, is not appropriate.

Section 48.193(1)(a), Florida Statutes, enumerates several acts that subject a nonresident to the jurisdiction of the courts of Florida, provided the cause of action arises from any of those acts. We are required to strictly construe the long-arm statute in favor of the nonresident defendant. Navas v. Brand, 130 So. 3d 766, 770 (Fla. 3d DCA 2014).

The Ghilottis argue that the amended complaint, either through alleging detailed facts or tracking statutory language, implicates sections 48.193(1)(a)(2) and (1)(a)(7). Specifically, the Ghilottis claim Woodruff-Sawyer is subject to long-arm jurisdiction because it committed tortious acts in Florida and breached an agreement in Florida.

First, we are unpersuaded that section 48.193(1)(a)(7) is implicated, which requires a breach of contract in Florida "by failing to perform acts required by the contract to be performed in this state." In no part does the amended complaint

10

track this language, nor does it contain specific facts to that effect. Even still, Woodruff-Sawyer's affidavit specifically contesting that basis of long-arm jurisdiction went unrebutted by the Ghilottis' affidavit. Thus, with respect to section 48.193(1)(a)(7), the complaint does not allege sufficient jurisdictional facts to bring the action within the ambit of Florida's long-arm statute.

Next, we address section 48.193(1)(a)(2), "[c]ommitting a tortious act within this state." The Ghilottis claim that Woodruff-Sawyer "effectively committed tortious acts within Florida and directed at individuals in Florida, including [the Decedent.]" As has been recognized by the Florida Supreme Court, a defendant's physical presence is not required in order to "commit a tortious act" in Florida. Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002) (holding that a nonresident defendant's telephonic, electronic, or written communications into Florida can amount to committing a tortious act in Florida). However, that does not obviate the connexity requirement: the existence of a causal connection between the defendant's activities in Florida and the plaintiff's cause of action. Id. Here, Woodruff-Sawyer's affidavit, in relevant parts, goes unrebutted: all activities and communications related to procuring the subject policies occurred in California, and the subject policies were issued to a California company. Therefore, we find that the Ghilottis did not satisfy the requirements for personal

11

jurisdiction under Florida's long-arm statute.  See, e.g., Merkin v. PCA Health Plans of Florida, Inc., 855 So. 2d 137, 141 (Fla. 3d DCA 2003).

Finally, the exercise of specific jurisdiction in this cause would be contrary to due process.  In Walden, the United States Supreme Court held that the foreseeability of harm to plaintiffs with connections to the forum state does not suffice to authorize specific jurisdiction, where the relevant conduct occurred entirely outside of the forum state. 571 U.S. 277 (2014).  In other words, "the plaintiff cannot be the only link between the defendant and the forum," as is the case here.  Id. at 286.  "What is needed – and what is missing here – is a connection between the forum and the specific claims at issue."  Bristol-Myers Squibb Co. v. Superior Court of California, 137 S. Ct. 1773 (2017).

For the reasons discussed above, we reverse, holding that the circuit court lacked both general and specific jurisdiction over Woodruff-Sawyer.

Reversed.