# Third District Court of Appeal

## State of Florida

Opinion filed December 7, 2022.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D22-169
Lower Tribunal No. 21-18442

————————————

**Condor, S.A.,**
Appellant,

vs.

**The Plurinational State of Bolivia,**
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, William Thomas, Judge.

Reed Smith LLP, and Edward M. Mullins, Ana M. Barton and Daniel Alvarez Sox, for appellant.

Greenberg Traurig, P.A., and Brigid F. Cech Samole and Bethany J.M. Pandher, for appellee.

Before EMAS, SCALES[1] and HENDON, JJ.

---

[1] Judge Scales did not participate in oral argument.

PER CURIAM.

Appellant Condor, S.A., co-defendant below, appeals a January 2, 2022 non-final order denying Condor's motion to dismiss for lack of personal jurisdiction. See Fla. R. App. P. 9.130(a)(3)(C)(i) (providing Florida's district courts with appellate jurisdiction to review non-final orders that "determine . . . the jurisdiction of the person"). We reverse the challenged order because: (i) appellee, plaintiff below, the Plurinational State of Bolivia's ("Bolivia") operative amended complaint failed to sufficiently allege that Condor committed a tortious act in Florida, see § 48.193(1)(a)2., Fla. Stat. (2021); and (ii) Bolivia failed to refute Condor's sworn declaration attesting that Condor did not participate in a business venture in Florida, see § 48.193(1)(a)1., Fla. Stat. (2021).

## I. RELEVANT FACTS AND PROCEDURAL HISTORY[2]

Condor is a Brazilian company that manufactures riot suppression weaponry (i.e., tear gas, flash and sound grenades, rubber bullets, etc.) for sale in foreign countries, not including the United States. In late 2019, Bolivia notified Condor that "due to logistical and legal problems" Condor could no longer sell Condor's weapons to Bolivia through its usual means. Condor

---

[2] The facts contained herein are taken from Bolivia's amended complaint and the parties' competing declarations submitted to the trial court for consideration of Condor's motion to dismiss for lack of personal jurisdiction.

2

then took steps to sell its weapons to Bolivia through a distributor, co-defendant Bravo Tactical Solutions, LLC ("Bravo Tactical"), a Florida corporation. Condor first entered into an agreement, on December 17, 2019, to sell its weapons to Bravo Tactical for approximately $3.4 million, the same price that Condor would have charged any other distributor under similar circumstances. Bravo Tactical then, on December 19, 2019, entered into a separate agreement to sell the weapons to Bolivia for approximately $5.7 million ("the Weapons Contract"). Importantly, Condor was not a party to the Weapons Contract. Condor manufactured and delivered the weapons to Bolivia in Brazil, receiving payment from Bravo Tactical in Condor's Brazilian bank account.

It is not disputed that co-defendants Bryan Berkman and Louis Berkman, officers of Bravo Tactical, bribed certain Bolivian government officials (also co-defendants in this case) to enter into the Weapons Contract, with both the Berkmans and the Bolivian government officials splitting the approximately $2.3 million profit from the sale. Indeed, the Berkmans and most of the corrupt Bolivian government officials pled guilty in federal court to participating in a bribery and money laundering conspiracy. Condor, referenced indirectly as an "Intermediary Company" in the federal criminal proceeding, was never charged with a federal crime.

3

In 2021, Bolivia filed the instant civil action in the Miami-Dade County Circuit Court against the Berkmans, Bravo Tactical, the former Bolivian government officials and Condor.[3] Relying upon the federal criminal proceeding, Bolivia's amended complaint set forth the bribery and money laundering scheme, alleging that Condor was a co-conspirator. Bolivia's pleading alleged, in relevant part, that Condor (i) "conspired with Defendant Bravo Tactical to enter into the contract with the Bolivian Ministry of Defense for the sale of chemical agents and ammunitions manufacturer by Defendant Condor knowing that Defendant Bravo Tactical would offer such goods at a significant surcharge," and (ii) "conspired to participate in a scheme whereby [the former Bolivian government officials] were paid secret bribes in exchange for awarding the Weapons Contract to Defendant Bravo Tactical." Bolivia's amended complaint asserted that the trial court had specific personal jurisdiction over nonresident Condor under Florida's long-arm statute because, Bolivia alleged, Condor operated, conducted, engaged in, or carried on a business venture in Florida in relation to the Weapons

_____

[3] Bolivia's amended complaint alleged claims against Condor for civil conspiracy (counts V and XIV), conspiracy to violate the Florida Deceptive and Unfair Trade Practices Act (count XV), aiding and abetting breach of fiduciary duty (count VI), violation of Florida's RICO Act (count VII), unjust enrichment (count IX), equitable lien (count X), and violations of Bolivian law (counts XII and XIII).

Contract and/or committed tortious acts in Florida in relation to the conspiracy. See § 48.193(1)(a)1.-2., Fla. Stat. (2021).[4]

On October 12, 2021, Condor filed its "Motion to Dismiss for Failure to State a Claim and Lack of Personal Jurisdiction." Therein, Condor claimed that Bolivia's amended complaint failed to sufficiently allege Condor's participation in a conspiracy, arguing that Bolivia's pleading alleged only that Condor engaged in a routine business transaction to make a profit. Condor also disputed the trial court's exercise of specific personal jurisdiction over it under Florida's long-arm statute, submitting the sworn declaration of its "Commercial Director" who contested the amended complaint's jurisdictional allegation. Bolivia then filed a response in opposition to Condor's motion to dismiss, providing the sworn declaration of its "General Director of Legal Matters of the State Attorney General's Office," who, in relevant part,

---

[4] Personal jurisdiction over a nonresident defendant under Florida's long-arm statute is either general or specific. "A Florida court has 'general' jurisdiction over a nonresident defendant when the defendant has 'engaged in substantial and not isolated activity within this state.'" Banco de los Trabajadores v. Cortez Moreno, 237 So. 3d 1127, 1132 (Fla. 3d DCA 2018) (citing section 48.193(2) of the Florida Statutes). "A Florida court may exercise 'specific' jurisdiction over a nonresident defendant in those cases in which it is alleged that the nonresident defendant commits any of the specific acts enumerated in the statute in Florida, so long as the cause of action arises from that enumerated act committed in Florida." Id. at 1133 (citing section 48.193(1)(a)1.-9. of the Florida Statutes).

attested that the amended complaint's allegations were accurate and that the various documents attached to the declaration were authentic.

On November 19, 2021, the trial court held a non-evidentiary hearing on Condor's motion to dismiss. The hearing transcript reflects that the court adjourned the hearing without making a ruling and directed the parties to submit competing, proposed orders. On January 2, 2022, the trial court entered Bolivia's proposed order denying Condor's motion to dismiss.

In the January 2, 2022 order, the trial court cited two, independent bases for extending specific personal jurisdiction over nonresident Condor under Florida's long-arm statute, determining that: (i) Bolivia's amended complaint sufficiently alleged Condor's participation in a civil conspiracy to commit a tortious act in Florida, § 48.193(1)(a)2., Fla. Stat. (2021); and (ii) Condor operated, conducted, engaged in, or carried on a business venture in Florida in relation to the Weapons Contract. § 48.193(1)(a)1., Fla. Stat. (2021). The trial court also found that Condor had sufficient minimum contacts with Florida to satisfy federal, constitutional due process concerns.

Condor timely appealed this January 2, 2022 order.

## II.   ANALYSIS[5]

The trial court conducts a two-step inquiry to determine whether it has personal jurisdiction over a nonresident defendant. See Parisi v. Kingston, 314 So. 3d 656, 660 (Fla. 3d DCA 2021) (citing Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989)). First, the court looks to whether the operative complaint either tracks the language of Florida's long-arm statute or "alleges facts sufficient to show that the defendant's actions fit within one or more subsections of the statute." Id. If the complaint's allegations are sufficient to establish application of the long-arm statute, the court must then determine whether the defendant has "sufficient minimum contacts" with Florida to satisfy due process concerns under the federal constitution. Id. If, however, the complaint's allegations fail to allege a sufficient basis to establish that the long-arm statute applies, the constitutional inquiry is not necessary and the trial court must dismiss the operative pleading for lack of personal jurisdiction. Id.

In this appeal, as below, Condor challenges the trial court's exercise of specific personal jurisdiction over it under Florida's long-arm statute. Specifically, Condor asserts that the trial court erred when it determined that:

---

[5] "We review de novo the trial court's decision on a motion to dismiss for lack of personal jurisdiction of a defendant." Banco de los Trabajadores, 237 So. 3d at 1132 n.5.

(i) Bolivia's amended complaint sufficiently alleged that Condor committed a tortious act in Florida in furtherance of a conspiracy, § 48.193(1)(a)2., Fla. Stat. (2021); and (ii) Condor conducted a business venture in Florida in relation to the Weapons Contract. § 48.193(1)(a)1., Fla. Stat. (2021). We address each ground in turn.

A. *Extension of Florida's Long-Arm Statute under the Co-Conspirator Theory*

Condor challenges the trial court's determination that Bolivia's amended complaint adequately alleged that Condor conspired with Condor's co-defendants to illegally – through bribery – procure the Weapons Contract. "A civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." Raimi v. Furlong, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997). "[I]f a plaintiff has successfully alleged a cause of action for conspiracy among the defendants to commit tortious acts toward the plaintiff, and if the plaintiff has successfully alleged that any member of that conspiracy committed tortious acts in Florida in furtherance of that conspiracy, then all of the conspirators are subject to the jurisdiction of Florida through its long-arm statute." NHB Advisors, Inc. v. Czyzyk, 95 So. 3d 444, 448 (Fla. 4th DCA 2012). This method of extending specific personal

jurisdiction over a nonresident defendant under the long-arm statute is known as the co-conspirator theory. Id.

Here, Condor does not dispute that the amended complaint sufficiently alleged that (i) Bravo Tactical, the Berkmans and the former Bolivian government officials conspired to commit tortious acts toward Bolivia, and (ii) the Berkmans and Bravo Tactical committed tortious acts in Florida in furtherance of the conspiracy. Condor, rather, contends that Bolivia's amended complaint's conspiracy allegations are impermissibly vague and conclusory as to Condor's involvement and participation in this conspiracy. Consequently, Condor argues, the trial court erred in extending specific personal jurisdiction over it through application of the co-conspirator theory. Id. ("[A] court will decline to apply the co-conspirator theory to extend jurisdiction over nonresidents if the plaintiff fails to plead with specificity any facts supporting the existence of the conspiracy and provides nothing more than vague and conclusory allegations regarding a conspiracy involving the defendants."); Parisi, 314 So. 3d at 661 ("[A] claim for civil conspiracy must contain clear, positive and specific allegations; general allegations of conspiracy are not sufficient. And, where the conspiracy allegations are deficient, the trial court must dismiss the complaint against a nonresident

defendant for lack of personal jurisdiction.") (citation omitted). On our *de novo* review of Bolivia's amended complaint, we agree with Condor.

While Bolivia's amended complaint clearly alleged a conspiracy between Bravo Tactical, the Berkmans and the former Bolivian government officials to sell tear gas, rubber bullets and other forms of riot control weapons to the Bolivian government at an inflated price via a bribery and money laundering scheme, and alleged that the Berkmans and Bravo Tactical committed certain acts in furtherance of this conspiracy in Florida, Bolivia's pleading otherwise failed to make the requisite clear, positive and specific allegations of Condor's participation in the conspiracy. Parisi, 314 So. 3d at 663. At most, the pleading alleged that Condor sold its riot control weapons to Bravo Tactical knowing that Bravo Tactical would then sell the weapons to Bolivia at a "significant surcharge." Far from a conspiracy, this is a common, rather routine, business practice. Missing entirely from Bolivia's amended complaint is any specific allegation detailing Condor's knowledge of, and participation in, the bribery and money laundering scheme between Bravo Tactical, the Berkmans and the former Bolivian government officials. See Savoia-McHugh v. Glass, Case No. 3:19cv2018-MCR/HTC, 2020 WL 12309558, at *8, *9 (N.D. Fla. Aug. 5, 2020) (recognizing that "each coconspirator . . . need only know of the scheme and assist in it in some

10

way to be held responsible for all of the acts of his coconspirators," and dismissing a complaint for lack of personal jurisdiction where "[the nonresident defendant's] involvement in the transactions and his alleged benefit from them [did] not give rise to a reasonable inference that he joined a conspiracy, because there [was] no factual allegation to indicate he was aware of the alleged wrongdoing" (quoting Charles v. Fla. Foreclosure Placement Ctr., LLC, 988 So. 2d 1156, 1160 (Fla. 3d DCA 2008))); Birmingham v. RoFx.net, Case No. 21-23472-CIV, 2022 WL 1686683, at *1 (S.D. Fla. May 26, 2022) (dismissing a complaint for lack of personal jurisdiction because the pleading's allegations that the nonresident defendant "would receive funds from RoFx customers and route the illicit funds as directed by the RoFx Operators – with little or no scrutiny" did not allow for a reasonable inference that the defendant played a "conscious role" in the alleged conspiracy); cf. Menendez v. Beech Acceptance Corp., 521 So. 2d 178, 180 (Fla. 3d DCA 1988) (recognizing that "[s]ome proof of knowledge of a conspiracy, and participation in it by the alleged tortfeasor, must be shown"). Indeed, Condor sold the weapons to Bravo Tactical for the same amount of money that it would have charged any distributor under similar circumstances. Because Bolivia's amended complaint failed to sufficiently allege Condor's participation in the conspiracy, the trial court

11

erred in extending the long-arm statute to Condor under the co-conspirator theory. Parisi, 314 So. 3d at 661.

Moreover, to the extent the trial court was persuaded that either Bolivia's response to the motion to dismiss or the various attachments to Bolivia's competing declaration provided the requisite level of specificity that is missing from Bolivia's amended complaint, we find that this was also error. "Until the plaintiff – within the four corners of the complaint – pleads a legally sufficient basis for extending long-arm jurisdiction over a nonresident defendant, the defendant is not required to file an affidavit, declaration or present other evidence to contest personal jurisdiction." Id. at 663. "That [Condor] filed a declaration supporting [its] motion to dismiss, and that [Bolivia] filed [its] own competing declaration, is inconsequential because the operative pleading is impermissibly vague and conclusory and, therefore, does not sufficiently plead a basis for extending jurisdiction over [Condor]." Id. at 664.

As we explained in Parisi, "Venetian Salami's burden shifting analysis is triggered, and the parties' competing affidavits become relevant, *only* when the operative pleading adequately alleges a basis for extending long-arm jurisdiction over a non-resident defendant; a non-resident defendant does not have to anticipate the plaintiff, in a responsive declaration, affidavit,

12

or otherwise, asserting entirely new allegations in support of personal jurisdiction." Id. (emphasis added). In other words, to correct its pleading deficiency, Bolivia could not assert new allegations in either its response to Condor's motion to dismiss or its sworn declaration that purported to provide the requisite clear, positive and specific allegations that are missing from its amended complaint.[6]

Because there was no basis for extending specific personal jurisdiction over Condor through application of the co-conspirator theory, the trial court should have dismissed Bolivia's amended complaint as to Condor's alleged participation in a conspiracy.[7]

B. *Extension of Florida's Long-Arm Statute Based on Condor's Alleged Carrying on a Business Venture in Florida in Relation to the Weapons Contract*

---

[6] We express no opinion as to whether the facts asserted in either Bolivia's response to the motion to dismiss or the documents attached to its sworn declaration, if incorporated into a second amended complaint, would sufficiently allege Condor's participation in a civil conspiracy.

[7] Because Bolivia filed only one amended complaint in this case, the trial court should have dismissed Bolivia's amended complaint without prejudice to Bolivia filing a second amended complaint. See Parisi, 314 So. 3d at 664; World Class Yachts, Inc. v. Murphy, 731 So. 2d 798, 800 (Fla. 4th DCA 1999) (recognizing that a plaintiff should be given "leave to amend a complaint unless the privilege has been abused, there is prejudice to the opposing party, or amendment would be futile").

Condor also challenges the trial court's alternate basis for exercising personal jurisdiction over Condor, i.e., the trial court's determination that Bolivia had adequately established that, with regard to the Weapons Contract, Condor had conducted business in Florida. For the purposes of section 48.193(1)(a)1. of the Florida Statutes, "to demonstrate that a nonresident defendant is 'carrying on business' the defendant's activities 'must be considered collectively and show a general course of business activity in the state for pecuniary benefit.'" Stonepeak Partners, LP v. Tall Tower Capital, LLC, 231 So. 3d 548, 555 (Fla. 2d DCA 2017) (quoting RMS Titanic, Inc. v. Kingsmen Creatives, Ltd., 579 Fed. Appx. 779, 783 (11th Cir. 2014)). "Factors to consider in making this determination "include: (1) 'the presence and operation of an office in Florida'; (2) 'the possession and maintenance of a license to do business in Florida'; (3) 'the number of Florida clients served'; and (4) 'the percentage of overall revenue gleaned from Florida clients.'" Id. (quoting RMS Titanic, Inc., 579 Fed. Appx. at 784).

"To bring the cause within the ambit of the long-arm statute, the complaint may either allege facts sufficient to show that the defendant's actions fit within one or more of the subsections of the statute, or track the language of the statute." Woodruff-Sawyer & Co. v. Ghilotti, 255 So. 3d 423, 427 (Fla. 3d DCA 2018). Here, trial court correctly found that the amended

14

complaint's specific jurisdictional allegation that Condor "operated, conducted, engaged in, or carried on a business venture in Florida in relation to the Weapons Contract" adequately tracked the language of the long-arm statute. See § 48.193(1)(a)1., Fla. Stat. (2021). Thus, Condor bore the burden of refuting the allegation by affidavit or other sworn proof. Woodruff-Sawyer & Co., 255 So. 3d at 427.

Condor met its burden by submitting the sworn declaration of its "Commercial Director" who contested the amended complaint's jurisdictional allegation. Among other things, this declarant attested that Condor: does not have an office in Florida; is not licensed or registered to do business in Florida; does not conduct any business in Florida; does not have any bank accounts in Florida; does not market any products in Florida; and does not sell any products to the United States. Further, "Condor did not solicit Bravo Tactical Solutions . . . in Florida." "Rather, Bravo [Tactical] approached Condor in or around November of 2019 to purchase certain products that it would resell to Bolivia." "Condor did not review or approve the [Weapons] Contract or even know its terms, including the retail price Bravo [Tactical] charged to Bolivia." "Condor manufactured, sold and delivered the [weapons] in Brazil." "Bolivia sent a Bolivian military plane to Brazil to receive and take the [weapons] to Bolivia." Finally, this declarant attested that

Condor received payment from Bravo Tactical in Condor's Brazilian bank account.

Because Condor's sworn declaration fully disputed the amended complaint's jurisdictional allegations regarding Condor's conducting business in Florida, the burden then shifted back to Bolivia to "refute the proof" in Condor's sworn declaration with its own affidavit or other sworn proof demonstrating that there is a basis for the Florida court to assert long-arm jurisdiction over Condor. Id.; Rautenberg v. Falz, 193 So. 3d 924, 929 (Fla. 2d DCA 2016) ("If the defendant's affidavit fully disputes the jurisdictional allegations, then the burden shifts back to the plaintiff to prove by affidavit or other sworn proof that there is a basis for long-arm jurisdiction."). Bolivia responded to Condor's showing by submitting the declaration of Bolivia's "General Director of Legal Matters of the State Attorney General's Office," who, in relevant part, attested merely that the amended complaint's allegations were accurate and that the documents attached to the declaration were authentic.[8] Bolivia's affiant's general and

_____

[8] Those documents included: (i) a November 26, 2019 letter from the Bolivian government informing Condor that Bolivia would only purchase weapons through Bravo Tactical; (ii) a December 9, 2019 Condor proposal to sell its weapons to Bravo Tactical that set forth the quantity, delivery terms and guarantee of its weapons; (iii) a December 10, 2019 Condor letter informing the Bolivian government that Bravo Tactical would be the distributor of Condor's weapons; (iv) the transcripts of voice messages between

16

somewhat conclusory assertions, though, failed to refute the showing of Condor, and they did not establish Condor's participation in a business venture in Florida with respect to the Weapons Contract between Bolivia and Bravo Tactical. Simply put, in response to Condor's evidentiary showing, Bolivia presented no evidence that Condor conducted business in Florida related to the Weapons Contract. See Stonepeak Partners, LP, 231 So. 3d at 557 ("The trial court did not find and the evidence does not support that [the nonresident defendant] dealt in any goods, services, or property in Florida or that [the nonresident defendant's] activities in Florida showed a general course of business activity for pecuniary gain."); Wrapapan, LLC v. Elson, 322 So. 3d 684, 688 (Fla. 4th DCA 2021) ("[I]t is undisputed that the negotiation and drafting of the unexecuted agreements occurred in New York. Those agreements required no performance in Florida, nor did any meetings concerning the venture take place in Florida. The appellants do not have an office in Florida and do not hold a license to operate in Florida. Thus, contrary to the trial court's ruling, the defendants did not carry on a business venture in Florida.").

---

representatives for Condor and Bravo Tactical with respect to Bolivia's receipt of the weapons in Brazil; and (v) bank statements reflecting wire transfers from Bravo Tactical's Florida bank account to Condor's Brazilian bank account.

Bolivia, therefore, did not satisfy the requirements, under Florida's long-arm statute, for the trial court to exercise specific personal jurisdiction over Condor. The trial court should have dismissed the amended complaint as to Condor's alleged participation in a business venture in Florida in relation to the Weapons Contract. Wrapapan, LLC, 322 So. 3d at 689; Stonepeak Partners, LP, 231 So. 3d at 558; Hilltopper Holding Corp. v. Estate of Cutchin ex rel. Engle, 955 So. 2d 598, 602 (Fla. 2d DCA 2007) ("If the plaintiff fails to come forward with sworn proof to refute the allegations in the defendant's affidavit and to prove jurisdiction, the defendant's motion to dismiss must be granted.").

## III.  CONCLUSION

Bolivia's amended complaint set forth only impermissibly vague and conclusory allegations as to nonresident Condor's participation in a civil conspiracy between residents Luis Berkman, Bryan Berkman, Bravo Tactical and former Bolivian government officials. These allegations were not sufficient to establish personal jurisdiction over Condor under section 48.193(1)(a)2. for committing a tortious act within the state. Further, in seeking to establish personal jurisdiction over Condor under section 48.193(1)(a)1., Bolivia failed to refute Condor's sworn declaration attesting that Condor did not participate in a business venture in Florida. We,

therefore, reverse the January 2, 2022 non-final order, and we remand with instructions that the trial court dismiss the amended complaint without prejudice to Bolivia filing a second amended complaint.

Reversed and remanded with instructions.